Woodruff vs. McDonald, et. al.

| 33 | 97 |
|----|----|
| 65 | 285 |

## WOODRUFF VS. MCDONALD, ET. AL.

1. FINDINGS OF THE COURT SITTING AS A JURY: *When conclusive.*

    The findings of a court sitting as a jury, are in the nature. of a special verdict, and are conclusive as to the facts of the case when the evidence is not set forth in full, and exceptions taken to the findings.

2. CONSIDERATION: *Burden of proof.*

    A written obligation for the payment of money imports a consideration, and upon an issue of want of consideration the burden of proof is on the defendant.

3. —————: *Adequacy.*

    Where there is any consideration for a contract, its adequacy cannot be questioned at law.

4. CORPORATION: *Stock subscriptions, etc.*

    Subscriptions to the capital stock of a corporation were made on a loose sheet of paper which was put in a bound book used as a record of the company, and the contents of the paper, with the names of the subscribers and amounts subscribed, were entered in the book by the commissioners appointed to open books of subscription; *Held,* that this was a sufficient subscription to the stock of the company. (See the opinion as to the effect of irregularities, as between assignee and assignor of the stock. Rep.)

APPEAL from *Pulaski* Circuit Court.

Hon. T. C. PEEK, Special Judge.

*Rose,* for appellant.

*Yonley* and *Whipple, Kimball, Faust, Benjamin* and *Barnes, contra.*

EAKIN, J. :

Appellant sued McDonald, and a number of other defendants, who had joined in the alleged purchase, from him, of

certain shares of stock in the Little Rock Bridge Company; chartered by special act of the General Assembly March 5, 1867.

This act, by section 2, appointed commissioners to superintend the opening of books for stock subscriptions; and also (when $30,000 should have been subscribed) to call a meeting for the purpose of electing five directors, to organize and conduct the affairs of the company. By section 4 it was made the duty of the President and Directors, upon the payment of the capital stock of the company, or any part thereof, to issue certificates of stock to the stockholders, specifying the number of shares to which each might be entitled. These certificates were made transferable under such rules and regulations as the President and Directors might adopt.

The complaint set up four written obligations executed jointly by defendants, on the 14th day of January, 1873, for $1250 each; in favor of complainant, Woodruff; due respectively at 9, 15, 18 and 24 months. These notes, each, recited that they were given in part payment for the assignment and transfer to the makers, by Woodruff, "*without recourse, of his two hundred and fifty shares in the capital stock of the Little Rock Bridge Company.*" Taken altogether, they provide that if default be made in the payment of the first, when due, all shall become payable and bear an increased rate of interest. Such default, it is alleged, was made; and judgment demanded for the whole $5000, with interest as stipulated.

The answer of the defendants is lost; but it is here agreed to have been, substantially, the same as that set up in another case now submitted with this, and, so taken, would show, that they admitted the execution of the several agreements in writing, as alleged. But they denied that either of them had received any assignment or transfer of any shares of stock. They denied that complainant had subscribed for any shares of such stock, or had paid anything for them to the company, or

in short, had any; and further denied any consideration for the notes. They charged fraud and misrepresentation upon complainant in claiming to own said shares, when that was false, and alleged that the certificates which complainant pretended to assign and transfer, and which purported to be for paid up stock, had in fact been issued by collusion between complainant and the Directors of the company, when nothing had been paid thereon.

The case was submitted to the court, without a jury, which found for the defendants, and rendered judgment against plaintiff for costs. Motion for a new trial overruled and appeal granted.

The bill of exceptions shows that the court found the following facts :

*First*—The passage of the special act of incorporation approved March 5th, 1867.

*Second*—A book purporting to be the record book of the company, showing that the original stock had been taken by plaintiff and others named, each taking $25,000 of capital stock. The entry, to this effect, was in the handwriting of Peter Hanger, one of the Commissioners to open books, and signed by plaintiff and A. M. Woodruff, two others of said Commissioners. The subscribers of stock did not subscribe *in this book*, but had affixed their signatures to a form of subscription on a loose paper, which had been kept in the book, and passed with the book into the hands of defendants, but was not now produced. There was no proof that the Commissioners were qualified as such.

*Third*—Certificates of stock were issued on the 30th of May, 1867, to those who were shown by the books to have been subscribers.

*Fourth*—A Board of Directors of said company was organized and proceeded to do business.

*Fifth*—No part of stock was ever paid in.

*Sixth*—The note in suit was given as part payment for a transfer of said stock. The defendants bought *all* of the stock at the same time, knowing that nothing had been paid on the subscription—and for the avowed purpose of getting the franchise of the company. They paid for the whole in cash $2500, and gave notes for the remainder. The whole purchase price amounted to $25,000. The certificates were regularly transferred at the time of the sale. The defendants expressed the intention to go on with the company, and did actually act afterwards in an assumed corporate capacity, but after a while ceased and allowed the privileges of the charter to expire.

Upon this state of facts plaintiffs asked the court to declare the law to be, that there was a consideration sufficient to uphold the contract sued on, and that the finding should be for the plaintiff. This the court refused to do, but found as a conclusion of law : " That said company was never legally organized, that the said certificates of stock were void, and that there was a total want of consideration to uphold the notes sued on, and that the finding should be for defendants." To this refusal and declaration, the plaintiff excepted, and, as no evidence is brought up, this is the only matter now presented to this court upon appeal.

It is the prevailing doctrine of the Federal and State courts, in some of which it is fixed by statute, and in most adopted as resting upon reason and sound principle, that the finding of a court sitting without a jury, is in the nature of a special verdict, and conclusive as to the facts of the case, where the evidence is not set forth in full and exceptions taken to the findings as not supported by evidence. This court has recognized this practice in the case of *Obermier & Co.* v. *Carr, Thompson & Co.*, 25 Ark., 562.

The written obligations import a consideration, and upon the issues made, the burden was on defendants to show that there was none. See *Richardson* v. *Comstock* for authorities collected, 21 Ark., 69. Do the facts, as found, show that?

This is not like a case of an action by the company against a subscriber to enforce payment of his subscription. In such case, if there be anything so irregular, informal, defective, or illegal in the subscription, that the company itself would not be bound if it had chosen to repudiate it, it might perhaps be well contended that for want of mutuality the contract was void. Nor is this like a case of a proceeding against the company for an abuse of its powers, or for acting without power, or in an unauthorized manner. Such proceedings are on behalf of the State, and in many cases the State alone can proceed to have the acts of corporations declared void.

The question here is, did the defendants acquire by the contract any advantages they would not have had without it, or did the plaintiff suffer any inconvenience, detriment, or loss. In either case the consideration would be good, and in an action at law, its adequacy is immaterial.

It appears from the facts, found by the court, that the subscriptions were made and signed upon a loose sheet of paper, which was put in a bound book appropriated to the records of the company, and the contents of the paper, with names and amounts of the subscribers were entered in the book, by the Commissioners appointed to open books. This was a sufficient compliance with the statute. The subscriptions do not appear to be invalid, and the burden of showing that, if true, was upon the defendants.

The issuance by the company of certificates, before any part of the subscription was paid in, was not expressly authorized by the act; and if it had been done by collusion between plaintiff and the officers of the company, without the knowledge or

assent of defendants, it would have been such a fraud in the sale of the stock, as would have authorized the defendants, upon discovery of the facts, to rescind the contract, or to recoup the amount of the payments on the stock. That, however, would have been because of the fraud, and not strictly for want of consideration. It was not, strictly speaking, the *certificates* which the defendants purchased. ·It was the *stock*, and the certificates were only evidence that the holders were entitled to hold the stock and transfer it.

The company seems, voluntarily, and for its own convenience, and that of its members, to have issued these certificates prematurely. We are not prepared to say from the facts that it did so fraudulently, or that its action therein was void. It was certainly done with the full concurrence of all parties interested, including these defendants, and, unless the State should complain, or some creditors, perchance, be misled, we see no reason for interference on the part of the courts.

The plaintiff, and all others of the subscribers, selling together and taking separate notes, or written agreements, denuded themselves of all rights they had as subscribers. These rights were valuable. They gave the subscribers the control of the franchise, which then, it is evident, was considered of great value. It enabled them to proceed and build a bridge over a large river at the capital city of the State, and take tolls, which might have been, and it was expected would be, very profitable. These advantages the vendors relinquished. If they had not sold them to defendants, they might have sold them to others, or gone on and built the bridge and taken tolls.

On the other hand, these advantages were acquired by the defendants, and so far as appears, fully enjoyed without let or hindrance from plaintiff or his original associates, or the State, or creditors of the company, or any one else. The purchasers became the company, and for a while assumed to operate it.

They knew the capital stock had not been paid in. If it were important that it should be, they had a right to pay it, and cure any defects. Whatever may have been the cause of their failure to avail themselves of the advantages acquired, the plaintiff is not shown to have had any agency in it.

Doubtless it turned out that the speculation was a bad one. We may presume that a change in the financial affairs of the community, or changes in the facilities otherwise afforded for crossing the river, caused the bridge to be abandoned. The money paid was a dead loss, and it is natural that the defendants should feel the hardship, and indulge the sentiment that their contract was without consideration. We think, however, that the court below erred in declaring that the facts as found, showed no consideration for the contract.

Let the judgment be reversed and the cause be remanded, with instructions to grant a new trial, and that the cause proceed in accordance with law, and not inconsistent with this opinion.