HELENA OIL & GAS COMPANY *v.* GOODKIN.

4-4808

Opinion delivered December 6, 1937.

8

*Marsh & Marsh,* for appellant.
*Sam Goodkin* and *Walter L. Brown,* for appellees.

SMITH, J. Appellant is a corporation organized under the laws of Pennsylvania and has its principal place of business in that state. It is an oil company and has oil interests in this state. Suit was filed by it against Joseph Goodkin and M. Friedmen, doing business as Oil Field Supply & Metal Company, and against G. W. Bates, for the alleged wrongful conversion of eight tanks belonging to it, of the alleged value of $1,600, this being their original cost price. The Oil Field Company answered that it was engaged in the business of buying and selling second-hand material, and that it had bought the tanks in the usual course of its business, and in good faith from their co-defendant, Bates, and had paid him $200, the full value, therefor. Bates answered that he had bought the tanks from H. H. McFann, as the authorized agent of plaintiff, and had paid for them with his labor and service performed under the direction and authority of McFann.

McFann, who was the principal witness for the plaintiff, testified that he was the superintendent and trustee for the plaintiff, and had charge of its property and business in this state. He admitted that he bought and sold property in this state for the plaintiff, and that he bought the tanks here in litigation from one Bradley. Sometimes he bought property for the plaintiff in his own name, but he was acting as trustee when he so purchased, and that he later turned over to plaintiff any and all property which he had purchased for it or for its account. The court submitted to the jury the question of McFann's apparent authority to sell the tanks, and the

testimony above recited sustains the finding that such authority existed.

The jury returned a verdict in favor of the defendants, and only two assignments of error are argued for the reversal of the judgment pronounced thereon. One of these is that the court improperly admitted in evidence a letter written to and received by Bates from the vice president of the plaintiff corporation. The other is that the court improperly admitted the testimony of the county assessor to the effect that plaintiff had not assessed the tanks for taxation. No instructions were asked or given as to the purpose for which this evidence might be considered, although, in admitting it over plaintiff's objection, the court stated that it might be considered by the jury for whatever it was worth.

The letter was offered during the cross-examination of McFann, and it reads as follows:

"This will acknowledge receipt of your letter of December 28, 1934, from which we understand that Mr. H. H. McFann has filed a suit, either in the name of the Helena Oil & Gas Company, or upon his own account, involving an oil and gas lease, at one time owned by the Helena Oil & Gas Company, which lease is described by you as being the east half of the northeast quarter, section 21, township 17 south, range 15 west, and covering 15.75 acres.

"You also seem to indicate that this lease was forfeited in 1927.

"We know nothing about this particular property, nor do we seem to have any record of having the suit authorized through Marsh & Marsh, attorneys.

"If you can, and care to do so, you might write us more fully on the subject, in order that we may have a better understanding just what information you are trying to convey to us."

The objection to this letter is that it has no relevancy to the subject-matter of the litigation, and that the writer did not understand what Bates had written about. This may be true, although it appears that Bates, while a tenant on the land where the tanks were stored,

had bought the land at a tax sale, which was later adjudged invalid. The letter from Bates to plaintiff, to which the letter copied above was a reply, was in the possession of plaintiff, and if it be true that the letter read in evidence had no relevancy to this litigation, that fact could easily have been made to appear. However, there was no question in the case about plaintiff's ownership of the tanks, as the title of defendants thereto was derived from that source. If, therefore, the letter was incompetent as irrelevant, we think its admission was not a prejudicial error requiring the reversal of the judgment.

The alleged payment for the tanks by Bates through work performed for McFann was a question of fact sharply in dispute. But that question of fact was submitted to the jury under instructions about which no complaint is made, and has been concluded by the verdict.

There was a wide difference of opinion as to the value of the tanks. The assessor was permitted, over appellant's objection, to testify that appellant had not assessed the tanks for purposes of taxation. The assessed value of property is a circumstance which may be shown in suits of this character where the market value of the property alleged to have been wrongfully converted is in issue. *Winter* v. *Bandel,* 30 Ark. 362: *White* v. *Beal & Fletcher Grocer Co.,* 65 Ark. 278, 45 S. W. 1060; *Schirmer* v. *Hallman,* 135 Ark. 5, 204 S. W. 606. Of course, proof of the assessed value is not conclusive of the market value, and it is permissible to prove the disproportion between the assessed and market values; but it is, nevertheless, a fact which may be proved in determining the market value. It was admitted that the tanks were sold for $200 cash, and that sale would apparently fix their market value at not less than that sum. However, the value of the tanks appears to be unimportant, inasmuch as the jury returned a verdict for the defendants. Of course, one would not lose his title to his personal property by failing to assess it for taxation, but no such contention appears to have been

made. The failure to assess was, however, a circumstance proper to be shown in determining whether the tanks had a value for the purpose for which they were purchased or had become mere junk, as defendants contended. Several witnesses testifying on behalf of defendants stated that the tanks had lost their value for the purposes for which they were intended and had been purchased by McFann, having been stored on the land rented by McFann to Bates. One of these, W. H. Burdette, testified that he was employed to cut up the tanks, and that McFann saw him while thus engaged, and asked him for whom he was cutting them up, and that McFann said nothing when told that witness was cutting them up for the defendants, Oil Field Supply & Metal Company. This witness said the tanks were nothing but junk and were worth not more than $150.

Bates testified that McFann directed him to make certain repairs on the land which McFann had let to him on which the tanks were stored, and told him that he would not pay a dime in money for the work, but that witness might have the tanks and other junk as his pay. Bates further testified that pursuant to this contract and direction he made the improvements, including the building of a fence, and a repair to the house on the land which was about to fall down. He estimated the value of his labor at $200, and he sold the tanks to his co-defendant, the Oil Field Company, for that amount. McFann denied that any such contract had been made or direction given. This issue of fact has also been concluded by the verdict of the jury.

The case was submitted to the jury under instructions to which no objection is made, and as no prejudicial error appears the judgment must be affirmed, and it is so ordered.