## WHITE *v.* BEAL & FLETCHER GROCER COMPANY.

### Opinion delivered May 7, 1898.

1. FINDING—SUFFICIENCY OF EVIDENCE.—A finding of the court that, at the time a creditor company brought suit by attachment against its debtors, it had no knowledge that the debtors had purchased goods from it with fraudulent intent not to pay for them is unsupported where uncontradicted testimony shows that, at the time the president of the company made the affidavit for attachment, he knew all the facts as to such fraud that he afterwards knew.   (Page 283.)

2. FRAUD—ELECTION OF REMEDIES.—A creditor who has brought suit to recover the amount due for goods fraudulently purchased from him and concealed may, upon subsequently finding such goods, abandon the suit on the debt and sue for possession of the goods if, at the time the suit on the debt was brought, he did not know where the goods were, and had no means of information which, if prosecuted, would have led to such knowledge.   (Page 283.)

3. EVIDENCE—TAX ASSESSMENT.—The book of assessments is competent to show the value of personal property, and is entitled to receive such credit as the jury may give it.   (Page 284.)

4. FRAUD—EVIDENCE—OTHER SUITS.—In a suit by a vendor to recover personal property alleged to have been fraudulently purchased on credit with intent not to pay for it, it is not admissible to prove that other

vendors have sued defendant and recovered personal property so purchased. (Page 284.)

5. SAME—OTHER ACTS.—Another act of fraud by a person is admissible to prove the particular act of fraud charged against him only when it is shown that the two are so connected as to make it appear that he had a common purpose in both. (Page 284.)

6. FINDING OF FACTS—OBJECTION.—Under Sand. & H. Dig., § 5839, providing for a new trial where the verdict or decision is not sustained by sufficient evidence, the objection that the court's finding of facts is not sustained by evidence may be made by motion for new trial, no exception at the time the finding is made being necessary. (Page 285.)

7. MOTION FOR NEW TRIAL—SUFFICIENCY.—A motion for new trial upon the ground that the findings of the court were contrary to the evidence is sufficient to raise the question whether they were sustained by sufficient evidence. (Page 285.)

8. FINDING OF FACTS—EXCEPTION.—Under a statute providing that, "upon trials of questions of fact by the court, it shall state in writing the conclusions of fact found separately from the conclusions of law" (Sand. & H. Dig., § 5837), the fact that the two are blended together does not make it necessary to except to the conclusions of fact. (Page 285.)

9. APPEAL—FINDINGS.—Where the court's finding of facts, upon which the judgment is based, is unsupported by evidence, the supreme court will not examine the evidence to see if there was evidence to uphold the judgment. (Page 286.)

Appeal from Conway Circuit Court.

JEREMIAH G. WALLACE, Judge.

*Carroll Armstrong, J. M. Moore* and *W. B. Smith*, for appellants.

Plaintiff knew or had the means of knowledge of the facts that authorized a rescission of the contract of sale, at the time it sought to affirm it. Hence it is bound by its election, and cannot disaffirm the sale and maintain replevin. 155 U. S. 38; 111 Mass. 272; 31 Mich. 312; 2 Smith, Lead. Cas. 1372, and notes; 5 Met. 49; 125 Ind. 381; 149 Mass. 141; 113 N. Y. 450; 45 Ark. 141; 52 Ark. 467; 31 Mich. 311; 115 N. Y. 387; 23 Wis. 500. Fraud in a particular transaction under investigation cannot be proved by evidence of other acts of fraud. The rule is the same as that which applies to the proof of negligence, for which see: 58 Ark. 454; 39 Ark. 278; 54 Ark. 621.

*Ratcliffe & Fletcher*, for appellee.

The affidavit for attachment does not point to any knowledge, by appellee, of the fraudulent character of the contract of purchase. 104 N. Y. 106. Election, to be binding, must be made with full knowledge of material facts. 13 Cal. 133–142; 50 Cal. 332; 22 O. St. 398; Kerr, Fr. & Mist. 452; Bish. Cont. 680; Bigelow, Fraud, 434–438; 37 N. E. 760; 27 Atl. 619; 33 Hun, 169; 22 O. St. 388; 3 Pick. 495; 45 Ark. 141; Big. Fraud, 30 *et seq.*, 2 Story, Eq. Jur. § 1097; 2 Gr. Ch. 509; 22 S. W. 813, 817; 28 S. W. 870, 873; 5 Met. 51; 2 Story, Eq. Jur. § 1098; 7 Enc. Pl. & Prac. 366; 50 Ark. 322; 53 Mich. 444; 51 Conn. 455; 42 Ga. 521; 30 Ia. 465; 31 Kas. 248; Kerr, Fr. & Mist. 453. Facts specifically found by a court, sitting as a jury, and not excepted to, are conclusive. 25 Ark. 562; 33 Ark. 97; 34 Ark. 524. Appellee is not estopped to set up the fraud to avoid the sale, as against attaching creditors. 47 Ark. 247. Estoppels are not favored. 15 Ark. 319; 4 Mass. 181; 1 Greenl. Ev. 22. The evidence complained of all tended to show fraud in the purchase of the goods, and was properly admitted. 109 Mass. 457; 18 N. Y. 589; 58 Vt. 315; 49 Vt. 355; 1 Greenl. Ev. § 53; 59 Vt. 247; 23 How. (U. S.) 172; 24 Vt. 525; 9 Gray, 97; 7 Wall. 132; 54 Ark. 554; 64 Ark. 12.

BATTLE, J. On the 31st of October, 1894, Overstreet & Son purchased from Beal & Fletcher Grocer Company goods and merchandise, on a credit, at the aggregate sum and price of $420.17, which, added to the sum they were already owing to the Grocer Company, made their indebtedness to it amount to about $1,000. On the 6th of November, in the same year, they failed in business. On the 8th of the latter month the Grocer Company sued Overstreet & Son for the amount of their indebtedness, including the $420.17, and caused an order of attachment to be issued against them, upon the ground that they had sold, conveyed and otherwise disposed of their property, and suffered and permitted it to be sold, with the fraudulent intent to cheat, hinder and delay their creditors, and were about to sell and convey their property with such intent. Afterwards, about three or four days, the Grocer Company

brought an action against B. G. White, sheriff, to recover the possession of the goods and merchandise sold on the 31st of October, 1894, they having been seized by the sheriff under orders of attachment sued out by creditors of Overstreet & Son, and being then held by him by virtue of such seizure.

Did Overstreet & Son fraudulently create the debt contracted by the purchase of the goods on the 31st of October, 1894, and, if so, did Beal & Fletcher Grocer Company elect to enforce the collection of the debt by process of law, with a knowledge of the facts necessary to know in order to enable it to make an intelligent choice of remedies, or did it so elect after such knowledge could have been acquired by it by the exercise of reasonable diligence after it was put upon inquiry or notice as to such facts? These were the issues tried in this action.

The evidence adduced at the trial tended to prove the following facts: Overstreet & Son were merchants, and did a mercantile business at Plummerville, in this state, for many years. During this time they contracted many debts, amounting to a considerable sum. They became insolvent, their liabilities largely exceeding their assets. While in this condition, on the 3d of August, 1894, they represented to the manager of Bradstreet's Mercantile Agency, at Little Rock, Arkansas, that their assets amounted to $46,000, and their liabilities to $12,500; and on the 4th of October, 1894, represented to R. G. Dun Mercantile Agency, at Little Rock, that their assets amounted to $37,100, and their liabilities to $6,600. These reports were evidently made for the purpose of obtaining credit from the merchants patronizing the agencies. Beal & Fletcher Grocer Company were subscribers of the R. G. Dun Mercantile Agency. When it sold goods to Overstreet & Son on the 31st of October, 1894, it regarded them as solvent. It based this opinion upon the report to the R. G. Dun Mercantile Agency and the information received from its agents. At the time they purchased the goods, on the 31st of October, Overstreet & Son represented to the traveling salesman of the Grocer Company that they were "in good shape, and thought the worst time of the business had blown over, and everything was all right," and thereby induced the salesman to believe they were solvent and to sell them the goods. On the 6th of November following,

they sold what was represented to be their entire stock of goods to one of their creditors, to pay their indebtedness to him. A part of their goods, including a portion of those purchased from the Grocer Company on the 31st of October, was found, by the sheriff, concealed in the house of a colored man, about a mile from Plummerville, and was seized under the order of attachment sued out by their creditors.

The order of attachment sued out by the Grocer Company on the 8th of November was based on the affidavit of J. T. Beal, its president, in which he swore that Overstreet & Son had sold and conveyed and otherwise disposed of their property, and suffered and permitted it to be sold with the fraudulent intent to cheat, hinder and delay their creditors, and were about to sell, convey, and dispose of their property with such intent. He (Beal) testified in the trial of this action that he knew as much, at the time he made this affidavit, about the disposition of property by Overstreet & Son, with the intent to cheat their creditors, as he did afterwards, except he had not discovered what disposition had been made of the goods his company sold on the 31st of October; that, after making the affidavit, he saw goods on a wagon, and recognized them as the goods sold by his company, and learned that they had been concealed; and that thereupon he went to Little Rock, in order to employ an attorney, and sent Mr. Cryer to identify the goods. Cryer testified that he identified the goods in controversy as a part of those sold on the 31st of October, "about two days after the failure."

The plaintiff in this action, the Grocer Company, was allowed to, and did, introduce as evidence, over the objection of the defendant, the book containing the assessment of personal property, in order to show the assessments of Overstreet & Son, and of each of them, and proved that other parties had sold them goods about the time they failed, and afterwards replevied the same.

The court, sitting as a jury in the trial, found that Overstreet & Son purchased the goods in controversy from plaintiff, with the fraudulent intent not to pay for the same; that plaintiff, at the time it brought the attachment suit against "Overstreet & Son, had no knowledge that said Overstreet & Son had

purchased said goods with the fraudulent intent not to pay for the same; and that said plaintiff is not estopped by said attachment suit from reclaiming the goods in controversy," and rendered judgment accordingly. The defendant filed a motion for a new trial, which was overruled, and he appealed.

Among the grounds set up in the motion for a new trial, the defendant alleged that the finding of facts by the court was not sustained by any evidence. Beal, the president of the Grocer Company, testified that he knew all the facts as to the fraudulent disposition of property by Overstreet & Son at the time attachment proceedings were instituted by his company that he afterwards knew, except that he had not ascertained where the goods it had sold then were. No other evidence was adduced to show that the debt contracted by the purchase of the goods on the 31st of October was fraudulently created, except that which showed a fraudulent sale of property by Overstreet & Son, and was necessary to sustain the attachment of the Grocer Company, and this was known to Beal at the time he made the affidavit upon which the attachment was based. That being true, the finding of the court that the Grocer Company, at the time it sued out the order of attachment, had no knowledge that Overstreet & Son purchased the goods in controversy with the fraudulent intent not to pay for them is unsupported by evidence; and the findings of facts by the court are not sufficient to sustain the judgment.

If, with a knowledge of all the facts necessary to enable it to elect intelligently between the remedy allowed to enforce the payment of the debt contracted by the purchase of the goods on the 31st of October, 1894, and that provided for the recovery of the goods, appellee instituted the action to collect the debt, it thereby ratified the sale, and could not thereafter institute and maintain an action to recover the goods. Before it could, however, act judiciously or intelligently in the selection of remedies, it would be necessary for it to ascertain whether the goods could be found and identified. Unless this could be done, a rescission of the sale and an action to recover the goods would be of no avail. If, therefore, the Grocer Company did not have this information at the time it brought the suit to recover the amount due on the debt, or was not put upon notice or

inquiry which, if prosecuted with reasonable diligence, would have led to the acquisition of the same, and afterwards found the goods and identified them, it was not bound by the action it had first instituted, but could sue for the possession of the goods, and recover them by making the necessary proof. *Butler* v. *Hildreth*, 5 Metc. (Mass.) 51; Bigelow, Fraud, 434–438.

There is no contention that the Grocer Company was put upon notice or inquiry as to any facts it did not know when it instituted the first action. The court did not find as to when it ascertained that the goods could be found and identified, and we are unable to determine whether it acquired this information before, after, or at the time the action for the price of the goods was commenced. We cannot therefore say that the judgment of the court was sustained by the undisputed facts, and upon that ground affirm it.

The book of assessments was competent evidence to show the value of the personal property of the firm of Overstreet & Son and its members, and is entitled to receive such credit as the jury might give to it. *Winter* v. *Bandel*, 30 Ark. 362.

The evidence as to the institution of suits for the recovery of property sold to Overstreet & Son by other creditors was incompetent, and should have been excluded

As to the evidence of sales made to Overstreet & Son by other creditors about the time the goods in controversy were sold by the Grocer Company, it is sufficient to say that the general rule as to such evidence is that another act of fraud by a person is admissible to prove the fraud charged against him only when there is evidence to show that the two are so connected as to make it appear that he had a common purpose in both,—that the same motive may be reasonably imputed to him in both. *Jordan* v. *Osgood*, 109 Mass. 457; *Hall* v. *Naylor*, 18 N. Y. 589; *Bradley Fertilizer Co.* v. *Fuller*, 58 Vt. 315.

The judgment of the circuit court is reversed, because the finding of facts were, in the manner before stated, not supported by any evidence; and the cause is remanded for a new trial.

On Motion for Reconsideration.

Opinion delivered May 21, 1898.

Battle, J.   The appellee moves the court to reconsider its judgment on the ground, among others, that the defendants, the appellants here, did not except to the findings of facts by the circuit court.

The special findings of fact by the court were within the issues joined by the parties in the action, and all the facts so found were essential, and, if true, were sufficient to sustain the judgment of the court, and there was no necessity or reason for finding any other fact or facts. The only objection to it is that it was not sustained by the evidence. This objection could be presented only by a motion for a new trial. No exception was necessary for that purpose. *Gardner* v. *Case*, 111 Ind 494, 498; *Dodge* v. *Pope*, 93 Ind. 480, 483; *Tarkington* v. *Purvis.* 128 Ind. 182, 188; 2 Elliott's General Practice, § 980. The statutes of this state provide that findings of facts by courts may be set aside upon motion for a new trial, when unsupported by sufficient evidence. Sand. & H. Dig., § 5839.

A motion was filed in this case to set aside the judgment of the court, and for a new trial, on the ground, among others, that the findings of facts by the court were contrary to the evidence. That was sufficient to raise the question as to whether or not the findings were sustained by sufficient evidence. *Obermier* v. *Core*, 25 Ark. 562; *Woodruff* v. *McDonald*, 33 Ark. 97; *Nathan* v. *Sloan*, 34 Ark. 524; *Fordyce* v. *Russell*, 59 Ark. 314, and *Dunnington* v. *Frick Co.*, 60 Ark. 250,—cited by appellee,— do not militate against this view. In the case last mentioned, the court, sitting as a jury, found the facts, and then declared the law upon the facts so found. No exception was taken to the declarations of law, and the court held that, as there was no exception taken, the declaration could not be reviewed here. It did not hold that an exception, in addition to a motion for a new trial, was necessary to raise a question as to whether the findings of facts were sustained by sufficient evidence. The statute provides: "Upon trials of questions of fact by the court, it shall state in writing the conclusions of fact found separately from the conclusions of law." Sand. & H. Dig., §

5837.    The fact that they are blended does not make it necessary to except to the conclusions of fact.

To show that there should have been specific exceptions taken to the conclusions of fact in this case, appellee cites *King* v. *Ritchie*, 18 Wis. 554; *Thomas* v. *Mitchell*, 27 Wis. 414; *Mead* v. *Chippewa County*, 41 Wis. 205; *Allen* v. *Hutchinson*, 45 Wis. 259; *Lucas* v. *San Francisco*, 28 Cal. 591; *James* v. *Williams*, 31 Cal. 211.    In the states in which these decisions were rendered, there are. statutes which provide for exceptions to conclusions of fact by the court.    2 Sanborn & Berryman's Annotated Statutes of Wisconsin, § 2870; *Lucas* v. *San Francisco*, 28 Cal. 591, 596.    The decisions were presumably based upon them (*King* v. *Ritchie, supra; Lucas* v. *San Francisco, supra*); but we have no such statutes in this state.

Appellee undertakes to show that undisputed facts sustain the judgment of the circuit court, independently of the findings of the court.    We do not think so.    If we are right, we cannot supply a finding as to such facts to uphold the judgment. *Smith* v. *Los Angeles Immigration & Land Co-operative Association*, 71 Cal. 289.

The motion for reconsideration is denied.