NATIONAL NOVELTY IMPORT COMPANY v. ELLIS.

Opinion delivered April 12, 1920.

1. SALES—GOODS NOT CONFORMED TO SAMPLE.—Where jewelry sold by sample, with the exception of a few articles, did not come up to the sample, the buyer was not required to keep the jewelry conforming to sample, but could reject all the jewelry.

2. SALES—WARRANTY NOT TO PRECLUDE RETURN OF GOODS.—Where a contract for the sale of jewelry provided that any articles failing to give satisfaction might be returned within a specified time and that the seller would refund the price or furnish a new article, the buyer was not required to accept goods not conforming to sample and pursue the remedy provided by such warranty.

3. EVIDENCE—DESIGN OR SYSTEM.—In an action by a seller for the price of goods sold, where the defense was that the goods did not conform to sample, evidence that similar goods sold by plaintiff to others under similar contracts made on the same trip and in the same vicinity *held* admissible as tending to prove a design or system.

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*A. F. Auer* and *J. S. Butt,* for appellant.

1. The court erred in not directing a verdict for plaintiff, for defendant admits that part of the goods were of equal quality of the samples shown him, but he failed to show how many and the value or price thereof. The burden was on defendant to show the number of items and the price of each item, and he has failed. Appellee did not follow or pursue the remedy provided in the written contract, and could make the defense admitted by the court over appellant's objections, and it was error to refuse appellant's instructions Nos. 2 and 3. 38 Ark. 177; 95 S. W. 451. For the same reason appellant's No. 6 should have been given. Defendant did not pursue the method provided in the contract. Neither can it avail him that he did not read it.

2. Appellant's seventh instruction should have been given as also No. 9, and erred in giving appellee's No. 2.   95 S. W. 451.

*W. P. Feazel,* for appellee.

1. The testimony shows that the appellee's signature to the written order or contract was secured by fraud, by falsely representing that the goods appellant was selling was as good as the samples shown, and fraud vitiates a contract *ab initio,* and the party committing it can take no advantage of it nor acquire any rights or interest by means of it.   35 Ark. 483; 22 *Id.* 517; 24 *Id.* 222.   The fraud of an agent vitiates a contract made by him for his principal.   48 Ark. 138; 49 *Id.* 320; 75 A. 97.

Fraud and false representations about a material fact which was the inducement or procuring cause of a sale will avoid the same.   110 Ark. 123; 95 *Id.* 131.

Representations to be fraudulent in law must be material to the contract or transaction sought to be avoided.   They must be made by one who knows them to be false, or, not knowing, asserts them to be true, and made with intent to have the other party act upon them to his injury, and such must have been their effect.   104 Ark. 388; 99 *Id.* 438; 123 *Id.* 492.

2. The representations here made to appellee in this case meet every requirement of the rule stated above, for it is apparent appellee would not have made the contract if he had known he was buying a lot of trashy, worthless jewelry which did not measure up to the samples shown.   The man made these representations.   If he did not know they were false, he at least asserted them to be true.   It is also evident that he made these false representations for the purpose of having appellee act upon them.   Ellis did rely and act upon them or he would not have signed the contract.   He did not see the goods and had no opportunity to inspect them and act upon his own judgment until the goods were received, and he was bound to rely upon the representations of the salesman.   Another circumstance to show the evil

intent is the way the goods were packed; those on top were good pieces and the balance were trashy and worthless. The manner of packing was intended and calculated to deceive. So we submit that the written order or contract was secured by fraud and false representations, and under the authorities *supra* was void *ab initio* and *in toto*. The theory that the contract was obtained by fraud was entirely ignored in all the instructions requested by appellant, and they were properly refused. 78 Ark. 180, relied on by appellant, is not in point at all, for the two contracts are entirely dissimilar, and in that case there was a written warranty that the goods should be as good as the samples, and also a provision that if they were not, the purchaser was to notify the seller within five days after the receipt of the goods by written notice by registered letter, otherwise the warranty was waived. If the word "customer" here refers to Mr. Ellis, he has done here exactly what the written contract required him to do, returned the goods to the seller. If it does not refer to Mr. Ellis, then there is no provision in the contract whereby he is protected if the goods should fail to come up to sample, in which case the authorities above cited authorize him to repudiate the contract for fraud. The instructions asked by appellant ignore the rights of appellee and were properly refused.

3. The instructions given for appellee correctly and fairly submitted the issues of fact to the jury, and it is shown by the evidence that only two or three pieces of jewelry came up to the samples, and it would be folly to require him to keep these pieces and return the balance. There was no objection to Ellis' testimony below, and its competence is not raised. There was no error in admitting the testimony of Roland or Latimer. Their transactions were similar to the one with Ellis and tend to show fraud and evil intent on the part of appellant's representative and were competent. 99 Ark. 597; 81 *Id.* 25.

As shown by appellant's abstract, it excepted to the refusal of the court to give its requested instructions *in gross,* and this was fatal, if any of the instructions were erroneous. 80 Ark. 587.

HUMPHREYS, J. Appellant instituted suit against appellee in the mayor's court at Nashville, to recover $198 for a showcase and jewelry sold by appellant to appellee through its saleman, P. H. Lea. The sale was evidenced by a written order with contract attached, setting out each item sold and the price therefor. The contract made the basis of the suit embraced 33 lots of novelties, each lot containing many items, valued separately, and agregating $198. One paragraph of the contract, designated "warranty," is as follows: "Should any article of jewery fail to give satisfaction as to workmanship, quality or wear, same may be returned to us by the consumer at any time within five years and we will refund in cash the price paid at retail for same, or furnish a new article free of charge." Appellee prevailed in both the mayor's court and the circuit court, to which the cause was appealed. From the judgment rendered in the circuit court, an appeal has been duly prosecuted to this court.

The undisputed evidence showed that the goods were sold by sample. The evidence is in conflict as to whether the jewelry shipped corresponded in kind and quality with the sample exhibited. The testimony of the witnesses on behalf of appellee was to the effect that only two or three articles on top were equal, and the others were inferior in kind and quality to the sample. Immediately upon the receipt of the goods, appellee shipped all of them, except the showcase, back to appellant, claiming that they did not correspond to the samples. He offered to keep or return the showcase at the option of appellant. The showcase had been shipped to him from another house on the order of appellant. Appellant declined to take the goods back or allow appellee to pay for the showcase separately, and demanded payment of the

aggregate amount of all the articles, as per contract price on each. So far as appears, the jewelry remained in the custody of the express company after being shipped back, each party to the litigation disclaiming ownership thereof..

It is contended by appellant that appellee is estopped to defend against the suit for the aggregate contract price of the articles on the ground that they did not conform to the samples exhibited, because some of them did correspond to the sample, and because the burden rested upon appellee to show which did not. In support of its contention, the appellant invoked the doctrine announced in *Pratt* v. *Metzger,* 78 Ark. 177, in relation to a suit predicated upon a written breach of warranty contained in the contract, which doctrine is as follows (quoting syllabus 3) : "Where a contract for the sale of goods embraced numerous items, sold by samples and warranted to be the same in quality as the samples, and the price to be paid was apportioned to each item, the contract was severable, and the purchaser was bound to accept such of them as corresponded to the samples." We think the doctrine has no application where only a nominal part of the items or quantity of the goods sold and purchased conformed to the samples exhibited, as in the instant case. According to appellee's evidence, only two or three articles, out of a large number purchased, corresponded with the samples, and these were on top in the carton; the others failed to come up with the samples, and were so much "junk." According to appellant's evidence, every article conformed to the corresponding sample. The amount of goods and number of articles conforming to sample being inappreciable, according to appellee's theory, the court properly ignored the rule invoked by appellant, even if applicable to case based upon an implied warranty that the goods equaled the sample.

It is next insisted that the contract contained a written warranty which imposed a duty upon appellee to accept the goods and pursue the remedy outlined, in the warranty clause contained in the contract. In other words, it is contended that the warranty clause in the

contract abridged appellee's right under the general law governing sales by sample from rescinding the sale or returning the goods for nonconformity to sample. The clause referred to is set out above and is only applicable to the purchaser, or appellee, after acceptance of the goods and sale of any item or article to a third party, and has no relation whatever to appellee's right to return the goods under the general law for failure to correspond with the sample. The fact that the measure of damages was fixed at the retail price in the warranty clause, if the jewelry failed to give satisfaction in workmanship, quality and wear, within five years, is conclusive that the warranty clause was intended to govern after, and not before, acceptance by the appellee, and, therefore, did not preclude appellee from his right to return the goods under the general law if they failed to come up to sample. All the instructions requested by appellant and refused by the court were drafted upon the theory that, under the written contract, appellee was precluded from returning the goods for failure to correspond with the samples exhibited and therefore were erroneous and properly excluded.

The question of whether the goods shipped conformed to the samples exhibited was a material issue in the case. The evidence upon that point was in conflict. Upon that issue, appellee was permitted to introduce, over the objection and proper exception of appellant, the evidence of Charles Roland, a merchant at Fulton, Arkansas, and W. H. Latimer, a merchant at Buck Range, Arkansas, to the effect that, on the same trip, H. P. Lea, agent of appellant, sold each of them similar goods upon samples; that the goods shipped did not correspond with the samples; that a few pieces on top were like the samples, but the further you got down into the package, the worse it got. It is insisted that the transactions with Roland and Latimer involved independent contracts with different parties, and, for that reason, evidence concern-them was incompetent, irrelevant and prejudicial to the rights of appellant. The contracts were similar in kind,

made on the same trip and in the same vicinity, and, therefore, admissible as tending to show a design or system. Upon that ground, evidence concerning them was admissible.

No error appearing, the judgment is affirmed.