Hillsborough,
No. 5681.

 EDGAR GIROUX, *Adm'r & a.*

*v.*

ARMAND GAGNE.

Argued November 8, 1967.
Decided December 29, 1967.

*Flynn, Powell & McGuirk* and *Raymond P. Blanchard* ( *Mr. Blanchard* orally ), for the plaintiffs Giroux, administrators and guardian.

*Sullivan, Gregg & Horton* and *Harkaway, Barry & Gall* ( *Mr. Sullivan* and *Mr. Gall* orally ), for Gagne.

*Clovis I. Desmarais* and *Burns, Bryant, Hinchey & Nadeau* and *Ross V. Deachman* ( *Mr. Deachman* orally ), for Levesque, administrator of the estate of Roger Levesque.

GRIMES, J.  Route 101 runs westerly from Portsmouth bypassing Exeter and Epping. Route 125 which runs southerly from Rochester crosses 101 at Epping. Armand Gagne and his wife testified that after spending a weekend with his sister in Sanford, Maine, they were returning to their home in Nashua via Rochester and Route 125, had turned west on Route 101 and were traveling between 45 and 50 miles per hour on their own side of the road when what turned out to be the Levesque car, traveling easterly, came over onto their side of the road and collided with them. Gagne testified that he did not blow his horn although he had time to do so, did not slow down but was turning toward his right to avoid collision. The accident occurred at 5:15 P.M. and it was dusk. The weather was clear but the road was wet. Since all the occupants of the Levesque car except Anne, who did

not testify, were killed, the Gagnes were the only eyewitnesses to the accident who testified.

The state trooper who was on the Exeter bypass when he received his call testified he arrived on the scene about five minutes after notification and about ten minutes after the accident. On direct examination by Gagne's attorney, he expressed the opinion that the collision occurred in the westbound lane. He testified that there were no skid, brake, gouge or other marks on the highway, and very little debris except some antifreeze from the radiators. On cross-examination he testified without objection that in his opinion Gagne was not turning to the right at the time of collision. This was based on the damage to the cars and their location and position on the highway after the collision. He also testified on cross-examination without objection that in his opinion the point of contact between the two vehicles was near the center of the road, two or three feet into the westbound lane, and that a sizable portion of the Levesque car was in its own lane at the time of collision. The highway between snow banks, he said, was fifty feet, seven inches and all hard surface, of which twenty-four feet was occupied by the two travel lanes and the balance by the two breakdown lanes, each about thirteen feet wide.

From the damage to the Levesque vehicle, it could be found that it was in contact with the other vehicle for the entire width of its own (Levesque) front end except for the right front fender, and that it made contact with the left front end of the Gagne car. From all the evidence, it could be found that the Gagne car was close to the center line of the highway at the time of contact. On Gagne's own testimony, the Levesque car was on its own side of the road when he first saw it and gradually came over into his lane. He did not apply his brakes or blow his horn although he had time to do so. Although he said he was pulling to the right at the time of the collision, the opinion of the trooper was to the contrary. The jury could find that, in the time and space that he had, it was causal negligence for him not to have pulled to the right sooner and farther than he said he did. This is sufficient to support the denial of the motions for nonsuit and directed verdict. *Mooney* v. *Chapdelaine,* 90 N. H. 415. See *Mack* v. *Hoyt,* 94 N. H. 492.

Defendant contends that the Trial Court erred in admitting the testimony of one Fortier who, over objection and exception, was

permitted to testify that he was east of Exeter proceeding toward Exeter on Route 101 in Stratham in a line of cars when a green Oldsmobile, also headed westerly, passed him, cutting in and out of a line of traffic which was moving forty to forty-five miles per hour, that he followed the car to the Exeter bypass which they both entered heading toward Epping, that he, Fortier, was doing sixty miles per hour at the bypass and the Oldsmobile was pulling away, and that he lost sight of it over the crest of a hill about ten miles from the scene of the accident and did not see it again until he came upon the scene of the accident, some five to ten minutes later. He said he maintained a speed of sixty miles per hour over the entire distance. He remembered the number plate of the green Oldsmobile that passed him was H13 something ( Gagne's registration number was HI-378 ). He testified he arrived at the scene of the accident before the state trooper and that the green Oldsmobile involved in the accident was the same one that had passed him in Stratham. It was a question of fact for the jury whether it was the same vehicle.

This evidence was admitted not only on the credibility of Gagne's testimony that he entered Route 101 from Route 125 and therefore was never in the vicinity of the occurrences about which Fortier testified, but also on the issue of speed which was submitted to the jury without exception.

Gagne concedes that the general rule which is followed here is that the admission or exclusion of inferential evidence to prove the continuing existence of a condition or conduct from prior condition or conduct is within the discretion of the Trial Court. *Lyman* v. *Railroad,* 66 N. H. 200; *Dimock* v. *Lussier,* 86 N. H. 54; *Cedergren* v. *Hadaway,* 91 N. H. 270; 2 Wigmore, Evidence ( 3d *ed.* ) *ss.* 382 and 437. See cases collected in Annot. 46 A.L.R. 2d 9. He contends, however, that Fortier's testimony ( conceding for argument only that the green Oldsmobile was the Gagne car ) involved conduct too remote to be of any value and that its admission was an abuse of discretion.

A review of the many cases involving merely evidence of speed at various distances from a scene of an accident would not be helpful. For a collection of cases, see Annot. 46 A.L.R. 2d 9. If the evidence in this case involved only testimony as to the speed of the vehicle ten or more miles away, we have grave doubts as to whether the discretion of the Trial Court could be

upheld. But the testimony of Fortier is not confined to the speed of the green Oldsmobile at one point. He said he followed and observed it for some distance, that he was going sixty miles per hour but it was pulling away from him when he last saw it, that he continued on maintaining a speed of sixty miles per hour and did not see the Oldsmobile again until he saw it at the scene of the accident although there were several long straight stretches of highway in between. From this evidence, the jury could find that the speed of the green Oldsmobile continued to exceed sixty miles per hour to the scene of the accident. *Comins* v. *Scrivener*, 214 F. 2d 810 ( 10th Cir. 1954 ); *Missouri Pacific Transport. Co.* v. *Mitchell,* 199 Ark. 1045. Under these circumstances, we cannot say that the Trial Court abused its discretion in admitting the evidence.

One Lemay also testified subject to objection and exception that he was a passenger in the left rear seat of a vehicle proceeding westerly from Exeter through Epping on Route 101 and that four or five miles at the most from the scene of the accident, he saw a "green car go past" and that when they arrived at the scene of the accident he said to his buddies "That car looks familiar." He testified, however, that he couldn't be positive, but that it looked like the same car. He said that the green car was going "seventy. Maybe a little more" when it passed him and that the car he was in was going fifty or fifty-five. He was seventeen at the time of the accident and had been driving a car a little over a year.

On cross-examination he was not positive that the car which passed him was green nor how long it was thereafter before they came upon the scene of the accident, but it "wasn't very long afterwards." He said they heard a noise and stopped to see if it was a flat tire, then proceeded and soon thereafter came upon the scene. The state trooper had passed them and was already at the scene and out of his cruiser and in the highway taking charge of things. All the occupants of the cars in the collision had been taken away except one body in the road.

Taken as a whole, Lemay's testimony was indefinite and uncertain as to the identity of the Gagne vehicle as the car which passed him. He would not go beyond saying that it "looked like the same car." It is difficult also to determine how, if it was the Gagne car that passed him not more than four or five miles

from the point of the accident, the state trooper who was ten miles from the scene when he was notified could have arrived at the scene before Lemay. There was, however, evidence that the car Lemay was in stopped, after being passed by the "green" car and after hearing a noise, to check for a flat tire, but there is no evidence as to how long.

While Lemay's testimony is inconclusive and it is difficult to reconcile his time of arrival at the scene with that of the trooper, we cannot say that it was an abuse of discretion for the Trial Judge to admit it, especially in view of the testimony of Fortier. See cases collected in Annot. 46 A.L.R. 2d 9, 29.

Gagne contends that the Trial Court erred in not granting a new trial on the issue of liability when he set aside the verdicts as to damages. It has been stated that a retrial for the correction of errors should be limited to that part of the case which might have been affected, if the issues as to which no error occurred can be separated. *Lampesis* v. *Comolli,* 102 N. H. 306, 308. The propriety of limiting a retrial generally rests in the discretion of the Trial Court. *Lampesis* v. *Comolli,* 101 N. H. 491, 492. A majority of the court is of the opinion that discretion was properly exercised in the circumstances of this case.

*Exceptions overruled.*

All concurred.