D. L. SWAN v. THE STATE OF ARKANSAS

5361                                         431 S.W. 2d 475

Opinion Delivered September 16, 1968

*Bon McCourtney & Associates* by *David N. Laser* for appellant.

*Joe Purcell,* Atty. Gen.; *Don Langston,* Asst. Atty. Gen. for appellee.

LYLE BROWN, Justice.    Appellant Swan was con-- victed for violation of our overdraft law.    His appeal is concerned with the sufficiency of the evidence, the admissibility of a prior insufficient check, and the propriety of permitting the prosecuting attorney to propound certain questions to the defendant on cross-examination.

Rogers Produce is headquartered at Piggott and wholesales poultry and eggs to a substantial number of

merchants in a trade area in several adjoining counties. D. L. Swan, appellant here, was a merchant in Pocahontas, to whom Rogers made deliveries twice weekly. So far as the record discloses, Rogers sold Swan on a cash basis. The deliveryman would take an order the first part of the week, deliver and collect the latter part of the week, and account to Rogers on returning to Piggott.

Rogers had done business with Swan for more than two years and the collection experience had been uneventful until September 3, 1966. On that date a check for $798.16 in payment for produce was returned marked "insufficient funds." On September 5 another check was likewise returned. Then on September 12 Rogers Produce delivered $288 worth of merchandise but refused to release it (on Mr. Rogers' orders) unless prior checks and invoices were paid along with delivery. Swan gave a check for $1,856.40 which would have satisfied all indebtedness except that again the check was dishonored. That check is the subject of this prosecution. Swan knew his account was insufficient; in fact his largest balance during the previous two weeks was $65.46.

Appellant contends that any evidence of fraud was explained away by his presentation of evidence. He testified that he did not intend to defraud Rogers, that it was his intention to pay off the checks "as soon as possible," and that he had written several bad checks and had always satisfied them later. His defenses were fact questions and it was for the jury to decide whether his intentions were fraudulent. The evidence was clearly sufficient to take the case to the jury.

Swan challenges the right of the State to introduce the September 5 check for $960.16. That argument was answered in *Tolbert v. State,* 244 Ark. 1067, 428 S.W. 2d 264 (1968). Tolbert was prosecuted under the same statute as Swan, Ark. Stat. Ann. § 67-722 (Repl. 1966), making it unlawful to give, with intent to defraud, a

check on an account which is known to be insufficient. In *Tolbert* the introduction of five other dishonored checks was approved. There are so many reasons why honest men can give an overdraft that the law requires a showing of specific mental attitude of criminality at the time the overdraft is written. The introduction of the September 5 check meets the test laid down in *Alford v. State,* 223 Ark. 330. 266 S.W. 2d 804 (1954)—the other conduct (giving of other overdrafts) is relevant in the sense that it tends to prove the essentiality of criminal intent which may not be established merely by showing the giving of the single check forming the basis of the charge.

Swan contends the court erred in allowing the prosecuting attorney to ask the defendant on cross-examination if he had ever been convicted of a felony, and in asking the defendant whether or not he got a fair trial in that conviction.

Over the objection of counsel for appellant, this colloquy occurred on the cross-examination of Swan:

"Q. Mr. Swan, have you ever been convicted of a felony?

A. Yes, sir, I have.

(After interruption for objections and exceptions, the questioning continued.)

Q. Have you been convicted of a felony?

A. You can call it convicted. I was railroaded in one.

Q. Do you feel like you didn't get a fair trial?

A. Well—yes, sir, in a way.

Q. Where were you tried? You weren't tried in this county?

A. No, sir, another county.

Q. In Lawrence County?

A. Yes, sir."

Of course it is permissible to inquire on cross-examination whether a defendant has been convicted of a felony.  Ordinarily, if his answer is in the affirmative then the inquiry is ended.  But in this case the defendant invited inquiry when he volunteered the statement that he was "railroaded in one."  The statements which followed merely showed that he was claiming to have been "railroaded" in Lawrence County, not Randolph County in which he was being tried.  Actually, the latter part of the dialogue could have been helpful to defendant.  It revealed he was not casting aspersions on the court of Randolph County.

We cannot say the court abused its discretion in permitting the prosecuting attorney to twice ask Swan if he had been convicted of a felony.  The recited interruption of the testimony could have justified the repetition as well as one of many other disturbances which are well known to interfere with the hearing of the jury.

The court erred, says Swan, in allowing the prosecuting attorney to ask the defendant leading questions. Appellant cites only one question in his brief. The prosecutor was questioning the driver who delivered the produce on September 12:

"Q. Mr. Huffman, did you make demand before you unloaded the chickens?

A. Yes, sir, I did."

It is possible that the question could have been better phrased to avoid the prohibition against leading questions on direct examination; but we perceive no prejudice or abuse of discretion.  It should be added that

had the question been more appropriately worded, the answer would have been the same. That is for the reason that the previous testimony of the deliveryman reveals the same version:

"Q. Would you back up and tell us exactly what you did when you arrived at the store that day?

A. Well, first of all I went back to the meat department and told the butcher there that I would have to have the money before . . ." (answer stopped by objection).

It cannot be disputed that it was the witness' persistent version that he first made demand for the money before unloading the produce. Later it was shown that he was so instructed by his superior.

Affirmed.