HOMER J. FULWIDER AND LILLIAN N. FULWIDER *v.*
C. L. WOODS, BANK OF BENTONVILLE AND
OLIN K. KNIGHT AND HELEN K. KNIGHT

5-5346                                    461 S. W. 2d 581

Opinion delivered January 11, 1971

*Kelley & Luffman,* for appellants.

*Eugene Coffelt* and *W. Gary Kennan,* for appellees.

JOHN A. FOGLEMAN, Justice. This is an appeal from a decree denying rescission of a contract for the purchase of real estate near Vaughn. Appellants Homer J. and Lillian N. Fulwider purchased the lands in September 1967 from appellee C. L. Woods. The sale was made through appellee Olin K. Knight, a real estate agent. The contract required installment payments, which were made by appellants until October 1968, after which Knight and his wife, as assignees of appellee Woods, brought an action to foreclose. Appellants filed an action to rescind the contract on the ground that it had been secured through fraudulent misrepresentations of

Knight. The two actions were consolidated for trial. The chancellor dismissed appellants' complaint and granted foreclosure.

Appellants alleged that Knight fraudulently represented to them that Woods was the owner of the lands, that the tract consisted of 3½ acres, and that there was a well which produced ample good water on the premises for domestic purposes and for any conceivable purpose. By an amendment to their complaint, appellants alleged a further ground for rescission—that Olin K. Knight forwarded to them an attorney's title opinion which had indicated certain exceptions to Woods' title, in order to induce them to purchase the lands, to their detriment. Appellants argue this ground only as it bore upon the preponderance of the evidence in relation to the other representations alleged.

The first ground for rescission is without merit. Woods was the assignee of an escrow contract for the purchase of the lands. The original contract was between one W. E. Walker and William E. and Beatrice G. Kohler. The Kohlers, as purchasers under that contract, assigned their rights to Woods, who then entered into the agreement to sell the land to appellants. The Bank of Bentonville was the escrow agent, and appellants made their payments to the bank after having received copies of the contract and certain "payment cards." Fulwider was satisfied with an opinion by an attorney that Woods could give him title to the property. We are not convinced that appellants were not informed as to the nature of Woods' title when they entered into the contract with him. There is no evidence to show a material shortage in the quantity of land.

Homer J. Fulwider came to Arkansas from Sacramento, California, to buy real estate. Olin Knight had previously sent him pamphlets, so he sought Knight out. Fulwider testified that he wanted a small place in a $7,000 to $8,000 price range, with plenty of water and a house, where he could raise calves. Fulwider said that he added that he might also like to raise rabbits. Ac-

cording to him, Knight implied that he had a place which might shelter rabbits, but Fulwider would have to pay more. Fulwider said Knight then showed him the place he later purchased. Fulwider's testimony about representations as to the water is abstracted as follows:

I inquired about the water and Mr. Knight said they had a fine pressure system. I asked him how much it would pump and he said it would pump all you would need. He then showed me the pump and said the well was there. He said you have a good deep well and you have 180 feet of water in it. I believe he told me what size it was and that it had been recently checked and was in good working order. I asked him for a taste of the water and he took me and my boy in the house and seemed rather reluctant and then he got a glass and gave me a glass of water and he gave my boy a glass of water. I told Mr. Knight that it tasted real flat and he said "mineral." He also told me Mr. Woods had all the water he needed and even had a garden. He then told me Mr. Woods owned the property and the Bank of Bentonville had the first mortgage.

Knight testified that he had drunk the water from the well on several occasions while Woods lived on the tract and when he showed the place to prospective purchasers. He said he found the taste satisfactory, except for a little mineral taste, and did not taste any sulfur. He stated that Woods had told him that he had plenty of water. He had never heard of anyone being short of water until renters from the Fulwiders complained about it after the sale. He denied having told Fulwider that there was plenty of water, but said that he only advised Fulwider that Woods said he had ample water supply for his needs. He had seen Woods irrigate his garden with this water on several occasions. According to Knight, he made the sale to the Kohlers, who lived on the property for two years without making any complaint about the water.

Knight denied on cross-examination that he had stated to Mrs. Janice King on May 15, or May 19, 1969, that there was good water on the property. He also denied that he had stated to anyone on May 20 or 21 that he did not know whether the water was hard or soft or how good it was, because he had never tasted it. He did not remember a man named Nail and did not think he had shown him the property.

Appellants offered the testimony of Janice King and of William T. Nail in an effort to contradict Knight's denials. The offers were made to go only to the credibility of Knight. Janice King was engaged to do investigative work on May 19, 1969. She testified that she called on Knight at the request of appellants' attorney. When appellees' objection was sustained, appellants stated that Mrs. King would testify: that on or about May 19 Knight took her to a place at Vaughn containing 3½ acres, when she expressed interest in 3 or 4 acres on which to keep horses; and that he said that the place had a new well and pump and when questioned about the water said it was good. William T. Nail, an investigator, said that he had visited Knight at the latter's office. Counsel's statement proffering the witness' testimony, after an objection was sustained, was substantially as follows:

> As a result of a conversation in Knight's office on May 20, 1969, Knight drove Nail to Vaughn, where he showed Nail a 3½ acre tract upon which there was an unoccupied frame building, a commercial building and a barn. Knight said that the house was modern with its own pressure system. When questioned about the water, Knight said that the well was more than 400 feet deep, with a new submersible pump and that it produced more than three gallons per minute which met the requirements of loan companies and was all that an average family needed. Knight professed not to know how good it was, because he had never tasted it. When asked about a depression in the ground between the house and the pump which had been covered with lumber, Knight advised Nail that he was

not sure whether the occupants had dug it for a drain for a washing machine or whether it was a septic tank that had caved in.

A witness cross-examined as to matter collateral to the issues cannot be impeached by the cross-examining party by evidence contradicting his testimony. *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405. The test of whether a fact is collateral is whether the cross-examining party would be entitled to prove it as a part of his evidence in chief. *Randall* v. *State*, 239 Ark. 312, 389 S. W. 2d 229. The question here is whether appellants might have been permitted to show by these witnesses Knight's statements, purportedly made to them, as a part of their evidence in chief.

The general rule is that another act of fraud by a person is admissible to prove the fraud charged against him only when there is evidence showing that the two acts are so connected as to make it appear that the actor had a common purpose in both, *i. e.*, that the same motive may be reasonably imputed to him by the evidence. *White* v. *Beal and Fletcher*, 65 Ark. 278, 45 S. W. 1060. In other words, according to the rule generally applied, if the purported representations to the witnesses King and Nail were not false, or were not made pursuant to a single plan or general scheme, or so clearly connected with the fraud charged in point of time, subject matter or otherwise, that it may be reasonably supposed that the motive or intention which prompted the two acts was the same, evidence thereof is not admissible. *Jordan* v. *Osgood*, 109 Mass. 457 (1872); *Hall* v. *Naylor*, 18 N. Y. 589 (1859); *Bradley Fertilizer Co.* v. *Fuller*, 58 Vt. 315, 2 A. 162 (1886) [these three cases were the authorities for our holding in *White* v. *Beal and Fletcher*, supra]. See also *Becker* v. *McKinnie*, 106 Kan. 426, 186 P. 496 (1920); *McKay* v. *Russell*, 3 Wash. 378, 28 P. 908 (1891); *Fowle* v. *Child*, 164 Mass. 210, 41 N. E. 291 (1895); *Castle* v. *Bullard*, 64 U. S. (23 How.) 172, 16 L. Ed. 424 (1860); *Tooker* v. *Alston*, 159 F. 599 (8th Cir. 1907); *Butler* v. *Watkins*, 80 U. S. (13 Wall.) 456, 20 L. Ed. 629 (1871); *Penn Mut.*

*Life Ins. Co.* v. *Mechanics' Savings Bank & Trust Company,* 72 F. 413 (6th Cir. 1896); *Lincoln* v. *Claflin,* 74 U. S. (7 Wall.) 132, 19 L. Ed. 106 (1868). Consistent with this rule, we have held that evidence of other acts or transactions tending to show a general plan or motive is admissible if they are of the same nature and close in point of time to the one in issue. *Black & White Cab Co.* v. *Doville,* 221 Ark. 66, 251 S. W. 2d 1005. Such evidence is admissible only as evidence of fraudulent intent, and is not evidence that the one charged with fraud made the representation with which he is charged to the party charging him. *Perkins* v. *Prout,* 47 N. H. 387 (1867); *Stowe* v. *Wooten,* 37 S. W. 2d 1055 (Tex. Civ.) App. 1931), aff'd, 62 S. W. 2d 67 (Tex. Com. App. 1933); *Wilson* v. *Carpenter's Adm'r.,* 91 Va. 183, 21 S. E. 243 (1895). Our holdings in criminal cases have always been in accord with this rule. See *Johnson* v. *State,* 75 Ark. 427, 88 S. W. 905; *Kerby* v. *State,* 233 Ark. 8, 342 S. W. 2d 412; *Swan* v. *State,* 245 Ark. 154, 431 S. W. 2d 475. There is no reason why the same rule should not apply in both civil and criminal cases.

The question involved is basically one of relevance. Its resolution involves the same or similar factors involved in determining admissibility of proof of prior or subsequent conditions or conduct to prove an existence of a condition or conduct at the time in issue. This determination is usually held to be within the discretion of the trial court. See *Giroux* v. *Gagne,* 108 N. H. 394, 236 A. 2d 695 (1967); *Cogswell* v. *C. C. Anderson Stores Co.,* 68 Idaho 205, 192 P. 2d 383 (1948); *Jensen* v. *Southern Pacific Company,* 129 Cal. App. 2d 67, 276 P. 2d 703 (1954); *Manning* v. *New York Telephone Company,* 388 F. 2d 910 (2nd Cir. 1968); *Little Rock Gas & Fuel Co.* v. *Coppedge,* 116 Ark. 334, 172 S. W. 885. Of course, there is no reversible error in such cases in the absence of an abuse of discretion.

Since no precise scale can be provided for measuring the adequacy of proximity in time, or other connecting elements, determination of admissibility of the type of evidence offered here must rest upon the facts and cir-

cumstances of the particular case. *State* v. *Murphy*, 17 N. D. 48, 115 N. W. 84 (1908). It is for this reason and because of the desirability of minimizing collateral issues, that admission of such testimony must repose largely in the sound legal discretion of the trial court. *People* v. *Denious*, 118 Colo. 342, 196 P. 2d 257 (1948); *Jones* v. *U. S.*, 258 U. S. 40, 42 S. Ct. 218, 66 L. Ed. 453 (1921); 29 Am. Jur. 2d 414, Evidence § 365.

If the property allegedly shown these witnesses was not the same as that involved here, it is clear that the evidence would not have been admissible. Not only would there be a difference in subject matter, but, since there is no showing at all as to the quantity or quality of the water supply on any other tract, it could not be said that representations in that regard were false. It is wholly irrelevant whether or not Knight did or did not, on other occasions make representations, not shown to be false, as to water supply on other lands he was offering for sale.

The proffer of the King testimony does not sufficiently identify the property as that involved here. We cannot say that there was any abuse of the court's discretion in excluding this testimony. On the other hand, the description of the tract purportedly shown Nail delineates particulars strikingly similar to the tract Knight showed and sold to appellants, so that it appears likely that this tract was the same as that sold to the Fulwiders. The record discloses that in the interval between the Fulwider purchase and the alleged showing to Nail, a definite deficiency in the water supply on the land had been disclosed and Knight, then representing the purchasers in renting the property, had advised the Fulwiders of the condition and proposed the digging of a new well. There was evidence that even after this was done, the water was distasteful and unfit for human consumption for a considerable period thereafter and that this condition was known to Knight. The tenant's wife was ill when she drank the water during residence on the property and an unusually large number of the tenant's cattle died.

In view of this evidence, any representation made by Knight to Nail with reference to the lands sold to appellants should have been admitted, if offered as evidence in chief tending to show fraudulent intent. *Myers v. Martin,* 168 Ark. 1028, 272 S. W. 856. The developments intervening between the Fulwider purchase and the alleged representations to Nail prevent the otherwise considerable lapse of time from making the latter too remote to have had any bearing at all on Knight's intent, if the testimony had been offered as evidence in chief. Consequently, exclusion of the Nail testimony when offered to impeach Knight constituted an abuse of the court's discretion.

Appellant also argues that the chancellor erred in giving significance to an offer by appellees during the course of the trial to have the present well on the land tested. While we agree with appellants that the condition of the well at the time of the sale was the pertinent issue, we cannot say that its condition at the time of the trial was completely irrelevant to the overall question of credibility of witnesses upon which the decision in this case will ultimately depend.

The decision does rest almost entirely upon whether Knight made a representation to appellants about the water supply sufficient to constitute an actual or constructive fraud. See *Croley v. Baker,* 237 Ark. 136, 371 S. W. 2d 830. In determining where the preponderance of the evidence lies on this question, the credibility of the witnesses is the controlling factor. Since the proffer of proof was in the form of a statement for the record by appellants' attorney, appellees had no opportunity to cross-examine Nail or to rebut his testimony.

Ordinarily, we decide appealed chancery cases here on trial de novo when the record is fully developed and we can plainly see what the rights and equities of the parties are. *Narisi v. Narisi,* 233 Ark. 525, 345 S. W. 2d 620. We do so even when questions of credibility are involved. See *Gardner v. Willson,* 219 Ark. 787, 244 S. W. 2d 945. We do remand such cases when action in

the chancery court has prevented the case from being fully developed, as where there has not been a fair opportunity to produce evidence, or where our finding of error leaves undecided fact issues which the chancellor is better able to pass upon by reason of his greater familiarity with the surrounding facts and circumstances. *Carmack* v. *Lovett*, 44 Ark. 180; *Fordyce* v. *Vickers*, 99 Ark. 500, 138 S. W. 1010. See also *Turman* v. *Bell*, 54 Ark. 273, 15 S. W. 886; *Carlile* v. *Corrigan*, 83 Ark. 136, 103 S. W. 620. In *Arkansas State Game and Fish Commission* v. *Kizer*, 221 Ark. 347, 253 S. W. 2d 215, we remanded upon reversal for the chancellor's refusal to allow cross-examination of engineers who made a report admitted into evidence. We there emphasized the importance of cross-examination to separate error from truth, opinion from fact and inference from recollection, to ascertain the time, place and attending circumstances of the events narrated by the witness and to test the intelligence, memory, impartiality, truthfulness and integrity of the witness.

We cannot say that this case is fully developed here or that the parties have had a full opportunity to develop this evidence bearing on Knight's credibility. We are in no position to pass on the credibility of Nail. We have no idea what cross-examination of this witness might have revealed. We cannot surmise that his testimony would not have been effectively rebutted if not discredited. Consequently, we remand the case to the chancery court with directions to permit the examination and cross-examination of the witness Nail on the matter outlined in the proffer of his testimony, to give appellees an opportunity to offer evidence rebutting his testimony and then to determine where the preponderance of the evidence lies.

Reversed and remanded with directions.