## LARKIN *v.* STATE.

## Opinion delivered December 10, 1917.

1. LIQUOR—ILLEGAL SALE.—The evidence held sufficient to warrant a conviction for the illegal sale of whiskey.

2. LIQUOR—ILLEGAL SALE—EVIDENCE OF OTHER SALES.—In a prosecution for the illegal sale of liquor, evidence of other specific sales is admissible, where the prosecution seeks to show a place or system on the part of the accused to engage unlawfully in the liquor business.

3. LIQUOR—ILLEGAL SALE—EVIDENCE OF OTHER SALES.—Defendant was tried and acquitted of a charge of selling liquor to one S. He was later tried for selling liquor to one H. *Held,* evidence of a sale to S. would be admissible in the second trial, where the court by its instructions, carefully protected the defendant against' a conviction of any charge except the one for which he was then being prosecuted.

4. APPEAL AND ERROR—TRIAL—REMARKS OF COUNSEL—BILL OF EXCEPTIONS.—A cause will not be reviewed for improper remarks of counsel, where the objectionable remarks do not appear in the bill of exceptions. It is insufficient where they appear in the motion for a new trial alone.

5. APPEAL AND ERROR—MISCONDUCT OF JURY—CRIMINAL TRIAL.—In a criminal prosecution, *held,* the record did not disclose that the jury were permitted to separate and mingle with the public during the trial.

Appeal from Carroll Circuit Court, Eastern District; *J. S. Maples,* Judge; Affirmed.

*C. A. Fuller,* for appellant.

1. The verdict is contrary to the law. No one shall be twice put in jeopardy for the same offense. Const., art. 2, § 8. Appellant was acquitted of the charge at a prior term. The record and proceedings were before the court and it takes judicial knowledge of all former proceedings. 16 Cyc. 917. The evidence of Spriggs *et al.* was not admissible. Other crimes can not be proven. 197 S. W. 684.

2. It was error to instruct the jury verbally. 71 Ark. 367. Also in refusing defendant's instructions requested.

3.   Improper remarks of counsel were allowed.   120 Ark. 492; 72 Ark. 138; 74 *Id.* 210; 65 *Id.* 389.

4.   The jury were allowed to separate and mingle with the crowd.   Objections were made and incorporated in the motion for new trial which is a part of the record.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.   Former jeopardy was not pleaded and hence abandoned.   103 Ark. 391.   The acquittal of selling to Spriggs was no bar to a prosecution for the sale to Hamlin.   57 Ark. L. R. 48.

2.   No request was made to reduce the instructions to writing.   80 Ark. 201.

3.   The court properly instructed the jury.   127 Ark. 289; 57 Ark. Law Rep. 48.

4.   The instructions asked were properly refused. 80 Ark. 495; 84 *Id.* 119; 81 *Id.* 25; 84 *Id.* 16; 127 *Id.* 289. Courts are not required to duplicate instructions.   103 Ark. 352; 101 *Id.* 120.

5.   The testimony of Spriggs, Gohn and others was admissible.   Appellant was present and made the sale.

6.   The remarks of the prosecuting attorney or the objections thereto do not appear in the bill of exceptions. It is not sufficient if they only appear in the motion for new trial.   121 Ark. 269; 126 *Id.* 300.

7.   It is not shown that the jury separated or mingled with the crowd.   35 Ark. 118; 26 *Id.* 323; 13 *Id.* 317; 32 *Id.* 309.

HART, J.   Charley J. Larkin was indicted for the crime of selling intoxicating liquors without license.   He was tried before a jury and convicted, his punishment being fixed at a term of one year in the State penitentiary. From the judgment of conviction he has duly prosecuted an appeal to this court.

Oscar Hamlin testified that during the fall of 1916, that he saw Charles Larkin at the fair held at Berryville, in the Eastern District of Carroll County, Arkansas; that

he did not know Larkin at that time but has since become acquainted with him; that in company with Jim Skelton he went into the defendant, Larkin's, place, at Berryville during the fair and bought two drinks and a pint of whiskey from him; that Skelton also bought some liquor from the defendant at the time; that after he got the drinks from the defendant he told him that he would give a dollar for what was left in the bottle; that the defendant said, "You loan me a dollar until I see you again;" that the defendant set the whiskey on the counter and that he went in and got it; that he left the dollar with the defendant. James Skelton in all essential respects corroborated the testimony of Hamlin. He said they first bought drinks of whiskey from the defendant and paid for them; that the drinks were poured out in glasses from a quart bottle; that Hamlin offered the defendant a dollar for all that was left in the bottle. The defendant made the remark, "You loan me a dollar;" that Hamlin laid the money down, went up and took the bottle of whiskey and carried it out and that the defendant took up the dollar which Hamlin had laid down.

Carl Spriggs testified that during the same fair he went into the defendant's place with old man Howell and bought some whiskey from him. He also testified that he told his father-in-law, Elmer Gohn, while driving past the defendant's place of business that he thought they could get some whiskey there; that his father-in-law gave him a dollar and that he went in and threw down the dollar and Larkin gave him a pint of whiskey, three bananas in a sack, and twenty cents in change, which he took back to where his father-in-law was; that this occurred during the fair in the fall of 1916, at Berryville, Arkansas.

Elmer Gohn testified that they drove up in front of Larkin's place of business and that Carl Spriggs said to Larkin, "What have you got to drink?" that Larkin replied nothing but water; that Spriggs then said, "I have plenty of that at home. Have you any whiskey?" That Larkin hesitated a little and then said, "If you want me

to, I might get you a drink;'' that they drove across the street; that he gave Spriggs a dollar; that Spriggs went back to Larkin's place and came out of it with a pint of whiskey and a little sack with three bananas in it; that they drank the whiskey and it was a poor grade.

Other witnesses for the State also testified that the defendant sold whiskey during the fair at Berryville in the fall of 1916.

The defendant testified for himself, and denied that he had sold whiskey to Hamlin, to Skelton, to Spriggs or to any one else during the fair at Berryville in the fall of 1916, or at any other time.

Joseph Howell was one of the witnesses who testified that he had bought whiskey from the defendant. The defendant testified that Howell came into his place of business with a sore throat and that he gave him a drink of whiskey; that after Howell drank the whiskey he bought a quarter's worth of cigars and paid for them but that he did not charge Howell for the whiskey. He further testified that he and Skelton would sometimes order whiskey together; that they would keep the whiskey in a bottle in his place of business; that when Skelton came in to take a drink out of the bottle, he would buy soda pop from him to drink with the whiskey. He testified that he heard of other persons near his place of business selling whiskey during the fair at Berryville in the fall of 1916, and that he reported them to the officers. Other evidence was introduced by the defendant to corroborate his testimony.

(1) The evidence for the State warranted the verdict of the jury. At the conclusion of the evidence the State was required to elect and elected to stand on the sale made to Oscar Hamlin. The court told the jury that the State elected to try the defendant upon the alleged sale made to Oscar Hamlin and that he must be convicted, if convicted at all, upon this particular sale and not upon any other sale made by him. The court also told the jury that proof of the other alleged sales was admitted to the jury for its consideration in determining whether or not a sale was made to Hamlin and not for any other purpose.

(2)    The defendant objected to the testimony of Carl Spriggs and Elmer Gohn and Joseph Howell specifically on the ground that the State had elected to try him at the last term of the court on the sale to Carl Spriggs; that these witnesses had testified on the trial of that case and that their testimony was substantially the same as their testimony in the present case and that the defendant had been acquitted of that charge. The prosecuting attorney admitted this to be true. The court, however, admitted the testimony in question over the objection of the defendant and counsel for the defendant duly saved their exceptions to the ruling of the court. This brings before us, then, the question of whether or not the court erred in admitting the testimony of Carl Spriggs and the other witnesses just referred to.

It is true that in a prosecution under an indictment charging the illegal sale of liquors in general terms, where the State elects to rely on a particular sale for conviction, the general rule of the criminal law, prohibiting the proof of similar crimes, applies. There are, however, certain well known exceptions to the general rule. In *Ketchum v. State,* 125 Ark. 275, evidence of other distinct sales was held admissible to illustrate the character of business conducted by the defendant. In that case the defendant claimed that he had not been engaged in the selling of whiskey since the first day of January, 1916, and that he only operated a family grocery store. Proof was made of other sales after the finding of the indictment. The court expressly told the jury that the defendant could not be convicted of any sales made after the finding of the indictment, but that under the circumstances the testimony was admissible to show that the business of selling liquor was carried on by the defendant at the place where the sale was charged to have been made.

Again, in *Turner v. State,* 130 Ark. 48, 196 S. W. 477, the defendant was charged with selling intoxicating liquors. The proof was that he had sold cider containing alcohol in such quantities that the persons who drank it be-

came drunk. In that case the State relied for a conviction upon the sale to a particular person. The court did not admit the sale of cider to other persons in aid of the State's proof that the defendant was guilty of selling to the particular person but the evidence of the sales to other persons was admitted solely for the purpose of showing that the cider was the same kind of cider that had been sold to the prosecuting witness and that it would produce intoxication upon those who drank it. In short, the testimony of sales to other persons was admitted to show the character of the liquor sold.

Another exception to the general rule is that in order to show a plan or system on the part of the accused to engage unlawfully in the liquor business, evidence of other sales than that for which the accused is prosecuted is admissible. See case note to 18 A. & E. Ann. Cas., pp. 850 and 851; *Stovall* v. *State* (Texas), 97 S. W. 92, and cases cited; *Archer* v. *State,* 45 Md. 33, and *State* v. *Peterson* (Minn.), 108 N. W. 6. It will be observed that in the sale to Hamlin the defendant requested Hamlin to lend him a dollar and when Hamlin did so he permitted Hamlin to take away all the whiskey that was left in the quart bottle. Spriggs says that when he purchased the pint of whiskey from the defendant that the defendant gave him a little sack with three bananas in it. The defendant himself denied that he made any sales of liquor whatever. With reference to the sale to Howell the defendant stated that Howell had a sore throat and that he gave him a drink of whiskey for it; that just afterwards Howell purchased a quarter's worth of cigars from him and paid him for them. So in looking to the record it would appear that the defendant had a certain system as to making sales. The evidence was admitted for the purpose of showing the course of business of the accused with reference to the illegal sale of liquor and the testimony tended to show that the transaction charged was a sale in accordance with the system pursued by the defendant.

(3)    It will be remembered that Hamlin testified that Skelton was with him when the sale was made and the defendant himself testified that Skelton had an interest in the liquor and would only buy soda water when he came to take a drink of liquor out of the bottle which had been left in the defendant's place of business. But it is contended by counsel for the defendant that the testimony of the sale to Spriggs should not have been admitted because the defendant had been acquitted at the last term of the court on the charge of making the sale to Spriggs.

In the case of *State* v. *Raymond,* 24 Conn. 204, defendant was charged with keeping intoxicating liquors with intent to sell the same in violation of law. William Taylor was allowed to testify that he had purchased of Raymond at his place of business at two different times intoxicating liquors. This was admitted to show that Raymond kept intoxicating liquors with the intent to sell the same. The prosecuting attorney admitted that charges were pending in the superior court against Raymond for making these sales to Taylor. In that case the defendant claimed that the sales to Taylor could not be used as evidence to convict him because if they could it would subject Raymond to two or more prosecutions for the same offense. The court held that the evidence was admissible to prove that he had sold to Taylor other liquor of the same kind in his store. The court said that the evidence of the sales to Taylor was admissible, not for the purpose of convicting the defendant of keeping that liquor for sale, but only for the purpose of showing the intent with which he kept the liquor, for the keeping of which he was being prosecuted. So here the court carefully protected the defendant against conviction of any charge except the one for which he was being prosecuted. Hence we are of the opinion that the court did not err in admitting the testimony of Spriggs and the other witnesses of the sale made to Spriggs.

The assignment of error based upon the giving of certain instructions at the request of the State and refusing others asked by the defendant was disposed of by the

principles of law which we have just discussed and announced. Hence it is not necessary to set out these instructions or to discuss them in detail.

It is next contended that the court erred in permitting Elmer Gohn to testify to a transaction and conversation between himself and Carl Spriggs with reference to the purchase of a pint of whiskey because the defendant was not present at the time. The record does not bear counsel out in their contention. Gohn testified that he and Spriggs drove up in front of the defendant's place of business and that the defendant seemed to hesitate about letting Spriggs have the whiskey then; that they drove across the street; that he, Gohn, gave Spriggs a dollar to purchase whiskey with; that Spriggs went back to the defendant's place of business and came out with the pint of whiskey and a sack with three bananas in it. So it will be seen that the witness' testimony referred to matters of which he had personal knowledge and could not in any sense be considered to be hearsay.

(4)   Defendant asks for a reversal of the judgment because of certain alleged prejudicial remarks made by the prosecuting attorney in his argument to the jury. The remarks complained of do not appear in the bill of exceptions. It is true that they are set out in the defendant's motion for a new trial, but this is not sufficient. The language objected to must appear in the bill of exceptions. This is the only authenticated record of matters which occurred at the trial outside of the judgment roll itself. Obviously it would not do to allow the defendant to make up his own assignments of error in his motion for a new trial without there being a record made of them by a bill of exceptions or other appropriate method.

(5)   Finally it is insisted that the judgment should be reversed because of the separation and conduct of the jury.

With his motion for a new trial, the defendant filed his own affidavit in which he stated that the sheriff permitted the bailiff in charge of the jury to go home while

the jury was deliberating and that while the jury was deliberating the sheriff permitted the jurors to mix and mingle with the crowd.   In contradiction of his affidavit, the State proved by the sheriff and by the deputy who assisted him in having charge of the jury that the jurors were not permitted to separate while deliberating on their verdict.   Some of the jurors were permitted to go from the jury room to the toilet in another part of the court-house on the same floor, but it was shown that the jurors were under the eyes of the sheriff or his deputy while doing this and that they did not speak to any one.   Affidavits of two of the jurors were also filed in which they state that the members of the jury were not allowed to mix and mingle with the public and were not allowed to converse with any one from the time they were empaneled until they were discharged.

We have carefully examined the record and find no prejudicial errors in it and the judgment will therefore be affirmed.