HARVEY VIRGIL TOLBERT *v.* STATE OF ARKANSAS

5344                                    428 S. W. 2d 264

Opinion delivered May 27, 1968

*G. Leroy Blankenship,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Following a jury trial in the Poinsett County Circuit Court, on information filed by the prosecuting attorney, Harvey Virgil Tolbert was convicted of a violation of "The Arkansas Hot Check Law" and was sentenced to five years in the state penitentiary. He has appealed to this court and relies upon the following points for reversal:

> "The verdict was not supported by the evidence because the evidence did not establish intent to defraud.
>
> The trial court committed reversible error in permitting the State to introduce five checks as a part of the testimony of Boyce Durham."

The facts are as follows: The defendant had become acquainted with one R. V. "Buck" Moore, a contractor living in Harrisburg, Arkansas. The defendant spent the night in Mr. Moore's home on October 1, 1966, and the following morning, being on Sunday, appellant advised Mr. Moore that he was short of cash and requested Mr. Moore to assist him in cashing a check. Mr. Moore went with the appellant to Main Highway Esso Service Station where the operator of the service station first refused to cash appellant's check, but when Mr. Moore agreed to "stand good" for the payment of the check, the operator agreed to cash it.

The appellant made out a check for $75.00 on a printed check form with blank spaces provided for the name and address of the bank. The check form had printed on its face as follows: "For value received. I represent the above amount is on deposit in said bank or trust company, in my name, is free from claims and is subject to this check." The appellant wrote "Citizens Bank of Smithville, Arkansas," into the spaces provided therefor; the check was made payable to Main Highway Esso Service Station, it was signed by the appellant and cashed by the operator of the service station. When the check was presented to the Citizens Bank of Smithville, appellant had no account in the bank and payment of the check was dishonored for that reason. Upon return of the check to the operator of the service station with the bank's notation "No Acct.," Mr. Moore was notified and he paid the operator of the service station as he had agreed to do.

Appellant was charged with, and convicted of, violation of Act 241 of the Acts of Arkansas for 1959, Ark. Stat. Ann. §§ 67-719—67-724 (Repl. 1966). The pertinent portions of which are as follows:

"For convenience this Act [§§ 67-719—67-724] may be referred to and cited as 'The Arkansas Hot Check Law.'

"It shall be unlawful for any person to procure any article or thing of value, or to secure possession of any personal property to which a lien has attached, or to make payment of any pre-existing debt or other obligation of whatsoever form or nature, or for any other purpose to make or draw or utter or deliver, with intent to defraud, any check, draft or order, for the payment of money, upon any bank, person, firm or corporation, knowing at the time of such making, drawing, uttering or delivering, that the maker, or drawer, has not sufficient funds in, or on deposit with, such bank, person, firm

or corporation, for the payment of such check, draft or order, in full, and all other checks, drafts or orders upon such funds then outstanding.''

The penalty provision of the act, § 67-723, as it applies to this case, is as follows:

"For a violation of this Act, in the event the amount of the check, draft or order involved is Fifty Dollars ($50.00), or more, punishment shall be by confinement in the penitentiary for not more than ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000).''

Appellant offered no evidence at the trial and the first point he relies on for reversal is settled by § 67-722 of the statute, as follows:

''As against the maker, or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or on deposit with, such bank, person, firm or corporation. The indorsement or stamp of a collecting bank on any check, whether such check be drawn on an out-of-state or in-state bank shall constitute prima facie evidence of presentment without protest.''

The check for $75.00 upon which appellant was prosecuted and convicted was dated October 1, 1966. At the trial of the case, the state introduced, over appellant's objection, five additional checks ranging in amounts from $10.00 to $16.25, and dated from October 10, 1966, to October 12, 1966, drawn by appellant on the Citizens Bank of Smithville, Arkansas, and dishonored for payment by the bank because the appellant had no account in the bank. The original information under which appellant was charged also contained counts in connection with these checks, but because the charges on these

checks constituted misdemeanors under the statute, they were dismissed from the information on motion of the trial court with direction that they be prosecuted under proper misdemeanor charges in municipal or justice of the peace courts.

These five checks were introduced at the trial, over the objections of the appellant, and the cashier of the bank was permitted to testify thereon for the purpose of showing "the mode, or method, or scheme of operation of the defendant, the motive and his guilty knowledge and intent." The checks were received in evidence for that limited purpose and the trial court so instructed the jury as follows:

"The Court has admitted testimony of other offenses similar to the one charged in the Information. You will not be permitted to convict the defendant upon such testimony. Evidence of another similar offense, if you believe another has been proven, is admitted solely for the purpose of showing motive, design and particular criminal intent, habits and practices, guilty knowledge, good or bad faith, and you should consider such evidence for this purpose alone and it shall not be considered in fixing any punishment that might be imposed.

The defendant is not on trial for any offense except the alleged offense of the issuance of the check of October the 1st, 1966 in the amount of $75, and the defendant cannot be convicted on testimony of other possible offenses."

In the light of the trial court's instructions, we conclude that the trial court did not err in permitting the introduction of the five additional checks for the purpose they were offered and accepted.

In *Kerby* v. *State*, 233 Ark. 8, 342 S. W. 2d 412, Kerby was convicted of obtaining money under false

pretenses in the sale of corporate stock by false representations concerning the assets of the corporation, and in that case this court said:

"... [I]n the case at hand Kerby's actual subjective intent was of controlling importance. Guilty knowledge is an essential element of the crime, for Kerby would have committed no offense if he believed his statements to be true. In such circumstances proof of other similar conduct, not too remote in time, is admissible to aid the jury in determining the intent of the accused. 'So, when it is material to show that a given act was done with a fraudulent intention, as, for example, in a prosecution for obtaining goods by false pretenses, other disconnected false pretenses in which the presence of fraud is recognized may be proved solely to show the intent. To illustrate: Where the accused had used a fraudulent abstract of title to induce one to sell him goods in exchange for real estate, it may be shown that the accused had on the same day employed the same means to induce another person to sell him goods.' Underhill, Criminal Evidence, (5th Ed.), § 208. We applied the principle in *Myers* v. *Martin,* 168 Ark. 1028, 272 S. W. 856, which although a civil case, is basically similar to the present case. There in a purchaser's action to recover damages sustained in the purchase of certain bank stock as a result of the seller's fraudulent representations it was held that the plaintiff could introduce proof to show that the defendant had made like misrepresentations in selling shares of the same stock to others. 'It tended to show a motive and a general scheme to induce people to invest in the stock of the bank.' "

In the case of *Larkin* v. *State,* 131 Ark. 445, 199 S. W. 382, we quoted with approval from *State* v. *Raymond,* 24 Conn. 204, as follows:

"... [D]efendant was charged with keeping intoxi-

cating liquors with intent to sell the same in violation of law. William Taylor was allowed to testify that he had purchased of Raymond at his place of business at two different times intoxicating liquors. This was admitted to show that Raymond kept intoxicating liquors with the intent to sell the same. The prosecuting attorney admitted that charges were pending in the superior court against Raymond for making these sales to Taylor. In that case the defendant claimed that the sales to Taylor could not be used as evidence to convict him because if they could it would subject Raymond to two or more prosecutions for the same offense. The court held that the evidence was admissible to prove that he had sold to Taylor other liquor of the same kind in his store. The court said that the evidence of the sales to Taylor was admissible, not for the purpose of convicting the defendant of keeping that liquor for sale, but only for the purpose of showing the intent with which he kept the liquor, for the keeping of which he was being prosecuted. So here the court carefully protected the defendant against conviction of any charge except the one for which he was being prosecuted. Hence we are of the opinion that the court did not err in admitting the testimony of Spriggs and the other witnesses of the sale made to Spriggs.''

In *Cain* v. *State,* 149 Ark. 616, 233 S. W. 779, the appellant was charged with, and convicted of, operating a certain gambling house in Hot Springs. One of the errors assigned on appeal was the admission of evidence as to other violations, and on this point we said:

"It is next insisted that the court erred in admitting evidence tending to show that the defendant operated gaming houses at other places in Hot Springs than the Pastime place. There was no error in admitting this testimony to go to the jury. It is true the general rule is that evidence of the commission

of other crimes is admissible only when such evidence tends directly or indirectly to establish the defendant's guilt of the crime charged in the indictment or some essential ingredient thereof. The evidence of the commission of other crimes of a similar nature about the same time, however, tends to show the guilt of the defendant of the crime charged when it discloses a criminal intent, guilty knowledge, identifies the defendant, or is part of common scheme or plan embracing two or more crimes so related to each other that the proof of one tends to establish the other.''

In *Wilson* v. *State*, 184 Ark. 119, 41 S. W. 2d 764, appellant was tried and convicted in Van Buren County of the crime of forgery and uttering in connection with a check made payable to R. O. Jones. The evidence on the part of the state tended to show that the appellant had drawn a check on the bank of Scotland, bearing the signature of R. O. Jones, for the sum of $6.00; that said check was returned marked No Acct.; and that there was no R. O. Jones in Van Buren County. A number of witnesses testified to different checks alleged to have been forged and passed in the same way, and the evidence also showed that the persons whose names were signed to the checks were fictitious persons. Dates on the checks covered a period of three years, and all of them ranged in amounts from $2.50 to $12.50 and were passed by the appellant about the same time the check of R. O. Jones was cashed. The appellant contended that the court erred in admitting testimony relative to other checks than the one to R. O. Jones.

In holding the evidence admissible, this court said:

''Evidence of similar forgeries is admissible to show a uniform course of acting from which guilty knowledge and criminal intent may be inferred. In other words, the evidence of other forgeries is admissible, not to prove the commission of the crime

for which the party is being tried, but to prove guilty knowledge or intent.''

In the case at bar, the statute placed the appellant under a presumption of fraudulent intent and he offered no evidence to overcome the presumption. He does, however, argue failure of proof of intent to defraud the payee service station since Moore agreed to make the check good and did pay the amount of the check to the payee. One of the fallacies in this argument is that the law does not confine appellant's intent to the service station alone. Consequently, we hold that under the instruction given as to the purpose for which the additional checks could be considered by the jury, the trial court did not err in admitting them into evidence for the limited purpose they were offered, and that the judgment of the trial court should be affirmed.

Affirmed.

FOGLEMAN, J., disqualified.