Andrew Jackson ROSS *v.* STATE of Arkansas

CR 74-35                                    514 S.W. 2d 409

Opinion delivered September 30, 1974

[Rehearing denied November 4, 1974.]

*Murphy, Carlisle & Taylor,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings, Jr.,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Andrew Jackson Ross, in 1971, the Treasurer of Pope County, Arkansas, was charged with the crime of embezzlement, the Information alleging 86 transactions of embezzlement of public funds in his custody and possession, it being alleged that the embezzlement occurred between January 5, 1971 and December 10, 1971. On trial, the jury found Ross guilty and his punishment was fixed at 21 years imprisonment in the Arkansas Department of Correction. From the judgment so entered, Ross brings this appeal. For reversal, four points are relied upon, which we proceed to discuss.

It is first asserted that a confession given by appellant was not freely and voluntarily made and was therefore inadmissible, this contention being based on the premise that the statement was given in consideration of a promise of leniency. We do not agree. Prior to the introduction of appellant's statement into evidence, a *Denno*[1] hearing was held in chambers on motion of the State, and at such hearing the Sheriff of the County and Robert H. Williams, original counsel[2] employed by Ross, testified, the latter being called by appellant. Williams testified that he had earlier entered into plea bargaining negotiations with the prosecuting attorney and had received assurances that that official would recommend to the court a 15 year sentence, 10 years being suspended, if Ross should plead guilty to the charges. The attorney testified that he gave this information to his client and was advised by the latter that the agreement was acceptable, and what Ross "wanted to do." Williams very clearly stated that the agreement was not contingent in any manner upon Ross agreeing to give a confession and, in fact, the lawyer testified that the agreement on the recommendation of time to be served was made before the prosecuting attorney asked for any statement. These were the only witnesses who testified in chambers and the court held the statement to be voluntarily made, commenting further to the effect that in in-

[1] *Jackson* v. *Denno,* 378 U.S. 368, 84 S. Ct. 1774.

[2] While not entirely clear, the record indicates that Williams was the attorney for the Bank of Russellville, one of the depositories for County funds, and this apparently occasioned his withdrawal.

stances where agreements had been reached between the State and defense, following plea bargaining, and a statement was subsequently given, such statement, under appellant's theory, no matter how voluntary, would be inadmissible if a defendant decided to retract such confession. In the trial itself, Williams reiterated the testimony given in chambers and further testified that the statement was taken in his office. Mr. Williams, a capable and experienced attorney, was present the entire time and thus was in a position to advise his client during the questioning. The attorney also testified that Ross was entirely willing to make a statement. Appellant relies upon *People* v. *Jones* (Ill. App.), 291 N.E. 2d 305, where the court held a confession to be inadmissible, such confession being rendered after an agreement had been reached by the State and defense during plea bargaining. We do not consider the case applicable to the fact situation at hand. In *Jones*, the testimony on the part of the defendant (which was sharply disputed) reflected that the promise of leniency was conditioned upon that defendant testifying on behalf of the State against another defendant; Jones was told that he could get 40 to 50 years if he went to trial. The opinion further reflects that the statement was taken by an Assistant State's Attorney in his office, counsel for defendant not being present. It is at once apparent that there is but little, if any, similarity in that case and the one at hand. In addition to the differences in the circumstances surrounding the statement here in issue, it will also be noted that Ross himself does not contend that the agreement reached between the prosecuting attorney and his counsel had any bearing on his willingness to give the statement. Not a single witness testified to such a fact. In fact, appellant admits in his brief that the confession was not given in consideration of the agreement between the State and defense counsel, appellant stating:

> "The testimony reflects that an agreement had been reached between the appellant's attorney and the Prosecuting Attorney and the statement given by the appellant was purely for whatever extrajudicial purposes the Prosecuting Attorney might have had."

It is true that the attorney said that he would not have permitted the statement to have been made except for the agreement which had already been consummated, but this

would seem to be the obvious view of an experienced attorney, and certainly has nothing to do with the voluntariness of the statement. For that matter, in *Jones,* the court held that the issue of voluntariness was a question for the trial court to determine and stated that a reviewing court will not disturb such a finding unless there is a showing that it is contrary to the manifest weight of the evidence.[3]

Appellant's brief also devotes a paragraph to an assertion that the confession was inadmissible for the reason that Ross, during interrogation, indicated that he wished to answer no more questions. We find no merit in this contention. In the first place, this issue was not raised in the trial court. The record reflects the following colloquy between the court and defense counsel, as follows:

"THE COURT: Do I understand you to say that there has been a denial of constitutional rights in this case?

MR. MURPHY: No. No. If this is admitted it will be. This is not a voluntary statement.

THE COURT: I see.

MR. MURPHY: Because *it was given under a benefit.*" [Our emphasis].

This objection, which has already been thoroughly discussed, was the only objection made to the admission of the confession. It might be added that Ross never declined to answer questions, and indicated only once that he was tired. Certainly, the finding of the Pope County Circuit Court that the confession was voluntarily made is not against the weight of the evidence.

It is next urged that the appellant lacked the mental capacity to voluntarily waive his constitutional rights, and that this lack of mental capacity was made known to the State at the time the confession was obtained. Let it be said at the outset that no objection along this line was made to the trial court at all. As previously stated, the *only* objection to this confession made to the circuit court was that it was the result

---

[3]In *Jones,* the trial court held the statement to be involuntary.

of coercion, i.e., made on the basis of the understanding that Ross would receive a lesser sentence. Under our procedure and cases, we do not consider arguments raised for the first time in this court on appeal. See *The Travelers Insurance Company* v. *McCluskey*, 252 Ark. 1045, 483 S.W. 2d 179. This actually could preclude consideration of the point, but inasmuch as this is a case of public interest, it might be said that even considering the point to be properly raised here, same is found to be without merit. Appellant's argument is based on the confession itself and thus is totally dependent upon the statements of Ross. Briefly stated, he related the disorders that he had been told he was suffering from by his doctor. He mentioned shock treatments at sometime in the past, and stated that the doctor, during his most recent confinement, thought he (Ross) was suffering from a brain tumor (but the tests showed normal); the doctor subsequently found a small cancer in his stomach. In subsequent testimony which was offered by the defense in an effort to establish insanity, Dr. Stephen Finch testified that Ross was suffering from chronic brain syndrome, a condition where brain cells die because of lack of blood supply. The doctor said that Ross suffered from a memory loss, more particularly of recent events, and that he would say that appellant's brain had deteriorated because of arteriosclerosis, to the age of an 80-year-old man. There was other medical testimony on both sides, but no testimony by any physician was offered that Ross was mentally incompetent to make the statement. The testimony of appellant's physicians was simply an effort to convince the jury that Ross was not guilty by reason of insanity.

The basis of the allegation that a lack of mental capacity was made known to the State at the time the confession was obtained is predicated simply upon a few statements that appellant made to the prosecuting attorney during interrogation. For one, when asked about the alleged giving of money to his secretary for extra work, Ross replied that he "wouldn't be capable of remembering what happened back then because I underwent shock treatments and it has kinda affected my memory a little bit." For another, appellant stated that his doctor had advised him that he would not be able to be present on the date set for trial and should not even engage in telephone conversations. It is argued that after

these observations by Ross, the prosecuting attorney should have ceased his questioning, but that instead, "Incredibly the inquisition continued for quite some length of time." We cannot agree that the matters mentioned reflect a lack of mental capacity to give the statement. Appellant appeared fully aware of the questions being propounded, and it is interesting to note that when asked if he had converted to his own use about $295,040.61, appellant responded, " '94, I believe." He also explained that at the end of each month, to make his bank statement balance with his books, he "would take from one bank and put in the other." When asked how much he would take from the bank[4], he answered, "Just whatever amount I used that month I would take from the other bank and then before the end of the month — at the end of the month I would put that back." Let it also be remembered that his attorney was present with him for the purpose of seeing that appellant's rights were not violated. The interrogation was conducted in a conversational manner and there was no harassment or intimidation of the witness. We find no merit in appellant's second point.

It is next contended that the introduction of evidence of alleged embezzlement occurring prior to 1971, and for which no criminal charge had been filed, was prejudicial and requires a reversal. Wendell Riddell, an auditor for the Division of Local Affairs Audit, employed by the Audit Division for about 12 years, testified that he recovered 85 checks totaling $41,570.00 for the year 1971 (this was the amount set out in the Information filed against Ross), and he asked appellant if he objected to telling the amount that had been taken. Ross responded that the amount of the shortage would be close to $300,000.00. Subsequently, appellant, according to the auditor, stated that they would have to go back over a period of years to determine the proper amount. The auditor testified that the total shortage amounted to $295,040.61. Counsel for appellant objected to "anything which happened before 1971," such objection being overruled, the court holding it admissible as testimony concerning method of operations. Counsel never did state why he objected to testimony concerning shortages before 1971, except that on one occasion he said that he objected "if this is trying to get anything in in the form of a confession or admission."

[4]The treasurer banked with the Bank of Russellville and the Peoples Bank.

Subsequently, counsel asked that the testimony be stricken, stating, "The Information is for $41,000." We find no merit in the contention. While evidence of other offenses is not admissible where the only purpose is to portray a defendant as a person of bad character, or addicted to crime, such evidence is properly received, *inter alia,* to show mode or method of operations, common scheme or plan, design, habits, practices, etc. See *Baker* v. *State,* 4 Ark. 56; *Cain* v. *State,* 149 Ark. 616, 233 S.W. 779; and *Tolbert* v. *State,* 244 Ark. 1067, 428 S.W. 2d 264. See also 22A CJS Criminal Law § 688 where it stated:

> "Proper evidence which proves or tends to prove a common scheme, plan, design, or system of criminal action will not be excluded because it also shows the commission of another crime by accused. Broadly speaking, evidence of other crimes than that charged is competent and admissible when it tends to establish a common scheme, plan, system, design, or course of conduct."

It might be added that appellant requested no instruction advising the jury that the testimony was admissible only for the purposes herein mentioned.

Finally, it is asserted that the trial court erred in refusing to declare a mistrial when the appellant discovered a member of the jury was a justice of the peace. Formerly, by statute (Ark. Stat. Ann. § 39-230 [Repl. 1962]), a justice of the peace could be peremptorily challenged, but such statute was repealed by Section 30 of Act 568 of 1969. Of course, there was no statutory disqualification even to begin with, and the juror was not challenged on *voir dire;* nor is there any indication that his presence as a member of the jury prejudiced the rights of the appellant. Under these circumstances, there was no abuse of discretion in refusing to declare a mistrial.

Finding no reversible error, the judgment is affirmed.

It is so ordered.